**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Marcela FLORES, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Felipe GONZALEZ–ESPARZA,
Defendant-Appellant.**

**Nos. 75–3439, 75–3440.**

United States Court of Appeals,
Ninth Circuit.

July 14, 1976.

Barrett S. Litt (argued), Los Angeles, Cal., for appellant in 75–3440.

Barbara Meiers, Asst. U.S. Atty. (argued in 75–3440 and appeared in 75–3439), Los Angeles, Cal., for appellee.

Howard W. Gillingham, North Hollywood, Cal., for appellant in 75–3439.

## OPINION

Before KENNEDY and SNEED, Circuit Judges, and CONTI,* District Judge.

PER CURIAM:

These cases have been consolidated for purposes of appeal. Both appellants appeal from their convictions in the Central District of California for the following offenses: one count of conspiracy to possess and distribute a narcotic drug (21 U.S.C. § 846); two counts of possession with intent to distribute heroin (21 U.S.C. § 841(a)(17)); and two counts of distribution of heroin (21 U.S.C. § 841(a)(11)). Appellants were convicted pursuant to a court trial.

Several motions were filed by appellants during the course of the proceedings in the trial court, including (1) a motion to suppress evidence, (2) a motion for the admission of polygraph test results, (3) a motion for discovery, and (4) a motion for reduction of sentence. Appellants' appeal is based on the District Court's denial of these motions.

In announcing the conviction of the appellants the District Court Judge stated that he believed the testimony of the government's witnesses and that he was particularly impressed with the credibility

* Honorable Samuel Conti, United States District Judge for the Northern District of California, sitting by designation.

of the prosecution's chief witness, a police informant named Ernesto Navarro. The Judge further stated that he disbelieved the testimony of the defense witnesses.

The informant Navarro testified that he and another informant named Jesus were standing on the corner of Brooklyn Avenue and Matthew Street in Los Angeles on May 23, 1975, at approximately 8:30 p.m. They were approached by Carlos Duarte, a co-defendant in the instant case, who was acquainted with Jesus. The three discussed the possible sale of narcotics by Duarte to Navarro. An agreement was reached that Duarte should bring a sample to Navarro for inspection at a nearby parking lot. This initial contact was observed by agents of the Drug Enforcement Administration.

When Duarte drove away, he was followed by Agent Keller of the DEA. Agent Keller testified that Duarte drove to 2212 Gates Street in Los Angeles, the address of appellants. Duarte entered the house, returned to his car a few minutes later, and drove back to the parking lot where he was met by Navarro and Jesus. Navarro inspected a sample of heroin given to him by Duarte, and arrangements were made for Duarte to contact Navarro by telephone regarding the sale of approximately one pound of heroin.

Duarte telephoned Navarro on May 27, 1975, setting up a sale of heroin on the following day. On May 28, between five and six o'clock in the afternoon, Navarro contacted Duarte by telephone. This conversation was recorded by the government. In this conversation Duarte stated that he would call his contact to arrange the transaction. Following the telephone conversation Navarro proceeded to Duarte's residence accompanied by Agent Keller who was holding the money intended to be used to purchase the heroin. Navarro entered the house. After discussing the question of money with Duarte, both men went out to Agent Keller waiting in the automobile. He showed Duarte approximately $12,000. They returned to the house. Duarte made a phone call in which he said that everything was ready and that the money was

there. A few minutes after hanging up, Duarte received another phone call and after that conversation they left the residence. The three men proceeded to the Gates Street address where appellants resided.

The testimony at trial was sharply in conflict regarding what took place at the Gates Street residence on the evening of May 28, 1975. According to the informant Navarro, he and Duarte went into the house while Agent Keller waited in the truck. The door was opened by appellant Gonzalez-Esparza who invited them to sit on the sofa in the livingroom. Also present were appellant Marcela Flores, Gonzalez-Esparza's wife, and a juvenile, Pedro Barrajas. According to Navarro, appellant Flores obtained from the utility room a four-inch high package of a substance alleged to be heroin. The package was weighed on a set of triple beam scales in the kitchen and totalled four hundred fifteen grams. A discussion of money followed. Navarro stated that he had left the money in the truck with his partner. He and Duarte left to get the money while the others waited at the front door. When the two men reached the sidewalk and turned left, Navarro removed his coat. This was a pre-arranged signal that contraband was present in the house.

At this point, federal agents converged on the house. Agent Tucker stated that he observed several people on the porch and that he announced to them that he and his companions were federal agents. The persons on the porch turned and ran into the house, slamming the door behind them. The agents knocked on the door and announced their presence and purpose. When they were refused admittance, they broke into the house. Appellant Gonzalez-Esparza was arrested in the doorway between the livingroom and the kitchen. Pedro Barrajas was apprehended while trying to escape through the back door. The agents found the bathroom door locked. One of the agents heard the sound of running water. The agents announced their presence and after waiting about thirty seconds forced

the bathroom door open. Appellant Flores emerged from the bathroom with a smile on her face.

Appellant Gonzalez-Esparza, as well as the juvenile Barrajas, were handcuffed and placed on the kitchen floor. Within a few feet of appellant and in plain view, one of the agents noticed a small cellophane package containing a substance later identified as heroin. This package weighed about twenty-seven grams. Gonzalez-Esparza, Flores, Barrajas, and Duarte, were all taken into custody.

A subsequent search of the residence conducted pursuant to a warrant issued on May 29, 1975, revealed no other controlled substances. However, a balance scale, allegedly used to measure heroin, and a one-pound bottle of lactose, allegedly used to dilute heroin, were seized.

There are four issues on appeal:

(1) Whether appellants' motion for suppression of the evidence seized at their residence was properly denied;

(2) Whether appellants' motion to admit into evidence the results of a polygraph examination was properly denied;

(3) Whether appellants' motion that the government be required to provide the case names and numbers of those cases in which the informant Navarro had previously testified was properly denied; and

(4) Whether the trial court's sentencing of appellant Gonzalez-Esparza to three years in prison, while sentencing his wife Marcela Flores to probation is a violation of the Equal Protection Clause of the 14th Amendment.

(1) *Search and Seizure:*

The trial court denied appellants' motion to suppress the evidence seized at their residence by the federal agents for the reason that the entry was made in "hot pursuit". The court accepted the testimony of the drug agents to the effect that (a) they identified themselves to the appellants who were standing in the agents' view with the door to their house open; (b) they ordered appellants to stand still; and (c) appellants ran into their house and slammed the door behind them.

The agents further testified that they then ran on to the porch of the house, knocked at the front door, announced their identities, and forced entry. One agent testified that they waited approximately 15 seconds before forcing entry. The trial judge accepted this testimony but stated that he did not believe that the agents had waited before entering. This is a factual determination based upon the trier of facts' weighing of the testimony of the agents. It will not be reviewed on appeal in the absence of abuse. *Glasser v. U. S.,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

The only issue for decision here is whether compliance with the so-called knock and announce statute, 18 U.S.C. § 3109, by federal agents before forcing entry into a dwelling vitiates a search as one made in "hot pursuit".

18 U.S.C. § 3109 provides that a police officer may break open any outer or inner door of a house to execute a search warrant, if, after giving notice of his authority and purpose, he is refused admittance. This statute also applies to entries for the purpose of arrest without an arrest warrant. *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). However, entry in "hot pursuit" has always been considered an exception to the knock and announce provisions of this section. *United States v. Bustamonte-Gamez,* 488 F.2d 4 (9th Cir. 1973); *United States v. Chambers,* 382 F.2d 910 (9th Cir. 1967); *McClure v. United States,* 332 F.2d 19 (9th Cir. 1964); *William v. United States,* 273 F.2d 781 (9th Cir. 1959).

Moreover, when the circumstances warrant an entry in "hot pursuit" the fact that the entry is accompanied by an announcement of authority does not preclude the application of the "hot pursuit" doctrine. In *United States v. Cisneros,* 448 F.2d 298 (9th Cir. 1971), appellant was convicted of importation and sale of heroin.

Undercover federal agents accompanied an individual named Thomas to appellant Cisneros' residence for the purpose of completing a heroin transaction with Thomas' connection. Thomas entered the dwelling and subsequently emerged with Cisneros. The undercover agents gave Thomas $700 and Thomas gave them 30.02 grams of heroin. Thomas and Cisneros returned to the residence. The undercover agents radioed to other agents that a heroin buy had taken place and instructed them to arrest Thomas and Cisneros. Two agents went immediately by automobile to the residence. One agent arrested Thomas just as she had stepped outside the house and a few steps away from the open door. The other agent ran toward the door and Cisneros slammed it in his face. The agent simultaneously announced his presence and identity, forced the door, and pursued Cisneros through the house and out the back door where he was apprehended.

The court held that Cisneros' conduct in slamming the door created probable cause for a warrantless entry and arrest. The court also held that a warrantless entry normally requires the officer to give notice of his authority and purpose before using force to enter. The court stated that an exception exists to the rule of announcement where the possibility of escape or destruction of evidence exists. The officer's entry was held to be valid as an entry made in "hot pursuit".

In the present case on appeal, the federal agents had probable cause for a warrantless arrest. Agents had observed appellants in possession of what appellants represented to be heroin. And later upon announcement of the federal agents' identity and purpose, appellants ran inside their house and slammed the door. The federal agents knocked on the door and announced their purpose and identity. When the door was not opened they forcefully entered the dwelling. These actions complied with the requirements of 18 U.S.C. § 3109. Upon entering the dwelling, the agents apprehended appellants, and only seized evidence in plain view. The subsequent search and seizure on May 29, 1975, was pursuant to a warrant.

There was certainly a high risk that appellants would flee or that they would destroy evidence. In fact, appellant Gonzalez-Esparza was apprehended while running toward the back door of the house, and appellant Flores was arrested under circumstances which permit the conclusion that she was destroying evidence. That the agents here complied with 18 U.S.C. § 3109 before entering appellants' dwelling should not vitiate their search as one made in "hot pursuit", and we hold that it does not.

(2) *Admission of Polygraph Tests:*

During the Suppression hearing, the District Court was advised that the results of a polygraph examination of appellant Gonzalez-Esparza would be offered on his and appellant Flores' behalf. Counsel made an offer of proof specifying the scientific foundation for reliability which would be established and specifying that the evidence would show as truthful, a negative response to the question, "Did you slam the door when the police were entering?" The court rejected the offer of proof without prejudice to renew.

Before final argument, counsel again made an offer of proof of the results of the polygraph examination. The court referred to its decision in *United States v. Urquidez,* 356 F.Supp. 1363 (C.D.Cal.1973), and denied the admission of the evidence on the following grounds: (1) too much time would be expended in the foundational hearing; (2) too many collateral issues would be raised; and (3) the art of the polygraph had not reached a state of reliability.

As recently as October 1975, this court has reaffirmed that a district court has wide discretion in refusing to admit polygraph evidence. *United States v. Marshall,* 526 F.2d 1349 (9th Cir. 1975). This court held that the proponent of such evidence has the burden of establishing a proper foundation showing that the evidence is

reliable. This court also held that even if a proper foundation is laid a court can refuse to admit polygraph evidence if the evidence will inject a time-consuming, potentially prejudicial, and, perhaps, confusing collateral issue into the trial.

■ Although the court in this case did not permit appellant to lay a foundation for the reliability of its polygraph evidence, the court still found that the introduction of the evidence would inject too many collateral issues into the trial. This comports with our holding in *Marshall,* and the trial court properly excluded the polygraph evidence.

**(3) *Discovery of Evidence to Impeach Informant:***

Appellants moved prior to trial that the District Court compel the government to disclose the names and numbers of the prior cases in which the informant Navarro had testified on behalf of the government. Appellants wished to discover whether the informant had previously testified in a case where an alleged heroin sale involved a package of four hundred fifteen grams which was never found at the scene of the crime. The purpose of this evidence was to impeach the credibility of the informant. The trial court denied appellants' motion.

Appellants argue that this evidence was discoverable for two reasons: (1) Rule 16, Federal Rules of Criminal Procedure, provides for such discovery, and (2) such discovery is mandated by the Due Process clause of the 14th Amendment.

■ *Rule 16, Federal Rules of Criminal Procedure:* the following version of Rule 16 was in effect at the time appellants were convicted:

(b) Other Books, Papers, Documents, Tangible Objects or Places.

Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, upon a showing of *materiality* to the preparation of his defense and that the request is *reasonable.* Except as provided in subdivision (a) (2), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective government witnesses (other than the defendant) to agents of the government except as provided in 18 U.S.C. § 3500.

(Emphasis added)

The informant Navarro testified that although he had given testimony in over one hundred cases, almost all of these cases had been tried in Mexico. The names and numbers of these cases were, therefore, not within the custody or control of the government. These materials were not discoverable under Rule 16(b), F.R.Crim.P.

■ Further, criminal histories and other background information regarding government witnesses are not discoverable for purposes of impeachment under the version of Rule 16, F.R.Crim.P. in effect when appellants were tried without a showing of reasonableness and materiality. *United States v. Conder,* 423 F.2d 904 (6th Cir. 1970), cert. den., 400 U.S. 958, 91 S.Ct. 357, 27 L.Ed.2d 267 (1971). In this case on appeal appellants made no such showing of reasonableness. Their request was tantamount to asking the government to fish through public records and collate information which was equally available to the defense. Further, appellants had ample opportunity to obtain this information from the informant upon cross-examination.

■ In addition, appellants made no showing of materiality. No extrinsic evidence indicated that the informant had planted the four hundred fifteen gram bag of heroin on the appellants' premises. A hunch that a similar fact pattern may have occurred in the past is not a sufficient

438

showing of materiality to warrant discovery under Rule 16, F.R.Crim.P.

*Due Process:* Appellants cite *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for the proposition that due process requires that evidence useful in the impeachment of a government witness be supplied to a defendant at his request. This is incorrect.

■ *Brady* does not create any pre-trial discovery privileges not contained in the Federal Rules of Criminal Procedure. *United States v. Zive,* 299 F.Supp. 1273 (S.D.N.Y.1969). Further, *Brady* only requires that the government supply a defendant with exculpatory information of which it is aware. In the instant case on appeal, the information sought by appellants was not in itself exculpatory. Further, the government stated that the information sought was not within its custody or control.

■ Failure of the trial court to grant appellants' motion for discovery was not a violation of due process.

(4) *Unequal Sentence:*

On October 20, 1975, the District Court sentenced both appellants. Appellant Gonzalez-Esparza was sentenced pursuant to 18 U.S.C. § 4208(a)(2) for a term of internment of three years with a subsequent three-year term of special parole.

Appellant Flores was sentenced pursuant to 18 U.S.C. § 5010(a) as a young adult offender under the Federal Youth Corrections Act. Appellant Flores was given a three-year term of probation. The trial judge before sentencing made the following statement:

"With respect to Marcela Flores, I'm also convinced that she is just as guilty as is her husband. And, but for one factor, I would feel obligated to impose upon her the same sentence imposed upon her husband. But she does have a child and is expecting another one. And I just don't think the interests of justice require the Government to take both parents away from these children."

The issue here is whether unequal sentencing based upon pregnancy constitutes sex discrimination and thereby violates the Equal Protection Clause of the 14th Amendment.

■ Sentencing judges are vested with wide discretion in determining appropriate punishment. The Constitution permits qualitative differences in meting out punishment and there is no requirement that two people convicted of the same offense receive identical sentences. *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). The Supreme Court has held that discrimination based on pregnancy is not invidious and therefore does not violate the Equal Protection Clause of the 14th Amendment. *Geduldig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974). This case held that a California State unemployment disability insurance program which did not pay benefits for pregnancy did not amount to invidious discrimination, and, therefore, did not violate the Equal Protection Clause of the 14th Amendment. Appellant Flores' preferential treatment based upon her condition was rational and within the sound discretion of the trial court. Appellant Gonzalez-Esparza's rights were in no way prejudiced thereby.

The trial court's sentence of probation for appellant Flores therefore did not violate the Equal Protection Clause of the 14th Amendment.

AFFIRMED.