**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Augustinus Petrus Maria KOUWENHO-VEN, Defendant-Appellant.**

**No. 78–1415.**

United States Court of Appeals,
Ninth Circuit.

Aug. 15, 1979.

---

Theodore R. Naimy, Jr., Los Angeles, Cal., for defendant-appellant.

Douglas W. Lofgren, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before WRIGHT and TANG, Circuit Judges, and SOLOMON, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

The defendant appeals from an order denying his motion for reduction of sentence, urging that the sentencing judge abused his discretion and that the resulting sentence constituted cruel and unusual punishment and violated the double jeopardy and due process clauses of the Fifth Amendment. We affirm.

Defendant, a citizen of the Netherlands, pleaded guilty on May 25, 1977 to conspiracy to dispose of stolen paintings in foreign commerce. 18 U.S.C. § 371.

The trial judge sentenced him in September 1977, but stayed execution of the sentence until December 5, 1977, pending the outcome of his deportation hearing. In two separate proceedings in October, the court considered applications for a return of his passport and for a recommendation against deportation. Finally, on December 5, the court considered his motion to reduce sentence.

At issue is the correct interpretation of the sentence imposed by the district court. The government argues that the court sentenced the defendant to two years in prison. Defendant contends the court ordered him to leave the United States and not return without a proper visa. The court's language at the sentencing hearing and during the later proceedings is critical.

At sentencing the judge said:

The Immigration authorities meet on November 23rd to determine Mr. Kouwenhoven's deportability. It is therefore

* Senior District Judge, District of Oregon.

the sentence of the court that the defendant will be committed to the custody of the Attorney General or his authorized representative for a period of two years. Execution of sentence will be stayed until December 5, 1977. If at that time the defendant has been deported, the court will consider a modification of sentence. If he has not been deported he will surrender to the United States Marshal of this District on the Main Street Floor of this Courthouse on or before 2:00 P.M. on December 5, 1977. Upon so surrendering himself or upon being deported and leaving this country, bond will be exonerated.

Immediately following imposition of sentence, defendant's counsel requested clarification:

MR. NAIMY: Your Honor, may I inquire if the defendant voluntarily leaves the country, will that satisfy the Court?

THE COURT: Of course. Upon so surrendering himself, upon voluntarily departing and promising not to again come back to the United States, bond will be exonerated, and a modification of the sentence will be in order.

At the October 17 hearing on the return of the passport, the prosecutor and an attorney from the Immigration and Naturalization Service (INS) informed the judge that the defendant was in the midst of deportation proceedings which would probably be concluded that afternoon following defendant's federal court appearance. Apparently with reference to the deportation order he expected to result from the INS proceedings, the judge said:

Maybe the best thing I can do is to simply have him serve those two years.

. . . . .

During that time, of course, the deportation proceedings will have taken place or be completed, and he could be deported at that time.

I don't want you or him to misunderstand what I meant in my judgment.

. . .

The intent of the Court was that he either serve a sentence or leave the country immediately.

Now, it seems to me that finding ways to get around the Court's order, the best thing for me to do is to deny the motion

. . . .

On representations by the prosecuting attorney that the passport was the property of the Dutch government and should be returned to their Consulate as a matter of comity, the trial judge ordered the passport be given to the prosecutor, with instructions to deliver it to the Consulate by noon the next day. This would allow the Consulate to issue the defendant travel papers once the deportation proceedings were concluded.

During the October 25 hearing on the defendant's application for a recommendation against deportation, the court first learned that the deportation proceedings had been continued and that the defendant had left the country before their conclusion. It was then unclear whether the INS would continue with the deportation proceedings in the defendant's absence, and the court denied the application.[1]

At the sentence modification hearing, defense counsel argued that, because the defendant had complied with the court's order to leave the country or serve the two-year sentence, the prison sentence should be reduced. The court disagreed and denied the motion, saying:

Well, the more I look back, the more I was right when I said that the worst possible sentence that I could give Mr. Kouwenhoven was banishment from the United States and all the events that have taken place indicate the validity of that knowledge of mine.

But I think the best thing that I should do in order to avoid any more confusion is to deny the motion and let everything stand where it stands. It simply would not be punishment enough if Mr. Kouwenhoven were excluded from the United States for five years and then permitted to come back without having to serve some time either in jail or in prison.

1. The INS later determined that the defendant's departure mooted the deportation proceeding.

So the matter is not simply whether or not he will be able to come back to this country but the question becomes if he does come back what punishment must this court impose upon him in addition to his, quote, voluntary exile for five years? And I am in a position at this time to make that determination.

So if he ever does come back, whether he comes back legally or illegally, he is going to have to stand before me for determination as to whether or not he should spend some time in prison. So in order to accomplish all that, the court denies the Motion for Reduction of Sentence.

## I.

### BANISHMENT

■ The defendant contends that his sentence was an unconstitutional attempt to banish or exile him. He relies on *Dear Wing Jung v. United States*, 312 F.2d 73 (9th Cir. 1962). We found an unconstitutional banishment when the trial court suspended imprisonment on the condition that the defendant leave the country. This case is distinguishable.

Here, the court did not require the defendant to leave the country as part of his sentence. It stayed execution of the sentence until *after* the pending deportation hearing, at which time it would *consider* modification if the defendant had been deported. No subsequent comments by the court reflect that this order was changed.

The defendant alleges the court indicated an intent to banish him when it stated: "I was right when I said that the worst possible sentence that I could give Mr. Kouwenhoven was banishment from the United States. . . ." The trial transcript, however, establishes that the court believed it was worse punishment for the defendant to be exiled *by the INS* than to serve his two-year prison sentence. Believing that

deportation was inevitable in light of the conspiracy conviction, the court imposed a relatively light prison sentence.

The defendant asserts that the court's language indicating it would be satisfied if he left the country voluntarily altered the original sentence to banishment because it forced him to choose whether to go to jail or leave the country. We disagree. That language meant only that, after entry of a deportation order, an alien may possibly be granted voluntary departure at his own expense, instead of being deported at government expense.[2]

Although during the October 17 hearing the court gave the defendant's passport to the Dutch Consulate and expressed the desire that the defendant leave the country immediately at the least possible expense to the government, it did so with the understanding the deportation hearing would conclude that day and issue a deportation order against the defendant. It was the court's hope that he would be granted voluntary departure and leave immediately. It did not sanction his departure before conclusion of the deportation hearing, nor did it change the original sentence by giving him the choice of serving his prison term or leaving the country.

■ At the December 5th modification hearing, the judge did nothing to disturb the original sentence. Because the defendant had not been deported or granted voluntary departure and did not surrender to the United States Marshal by December 5th to begin serving his prison term, he had not begun to serve his sentence. *See Scott v. United States*, 434 F.2d 11, 23 (5th Cir. 1970); *Bandy v. Willingham*, 398 F.2d 333 (10th Cir.), *cert. denied*, 393 U.S. 1006, 89 S.Ct. 497, 21 L.Ed.2d 470 (1968); 18 U.S.C. § 3568. The court may legitimately treat him as a fugitive and require him to appear before it to determine how much time he must serve in prison should he ever reenter the country.

---

**2.** Under 8 U.S.C. § 1254(e), the Attorney General may grant an alien voluntary departure in lieu of deportation following a determination that the alien is deportable. An alien who is granted voluntary departure may choose his own destination instead of being deported to a destination in the discretion of the INS.

**238**

## II.

### DOUBLE JEOPARDY

The defendant also urges that he began to "serve" his sentence of exile or banishment on October 20, when he left the country, and that the December 5 order to appear for resentencing upon re-entry violates double jeopardy and due process because it increased his punishment after he had begun serving his sentence. *United States v. Benz,* 282 U.S. 304, 307–309, 51 S.Ct. 113, 75 L.Ed. 354 (1931).

■ In view of our conclusion that the initial sentence imposing a two-year prison term had never been altered, and that defendant had not begun to serve it when he left the country, defendant's contention is meritless. Denial of his motion for a sentence reduction did not increase the sentence. As a result, there was neither a double jeopardy nor a due process violation.

## III.

### ABUSE OF DISCRETION

Finally, defendant argues the court abused its discretion in denying his motion for reduction of sentence. He asserts that the court promised his sentence would be modified if he left the country and that he did so in reliance on this promise.

This argument is also without merit. First, the court said it would *consider* a modification, not that it would modify the sentence. We also note that the judge assumed before the October 25th hearing on the recommendation against deportation that the defendant would be ordered deported after regular INS proceedings. Because an order of deportation would make the defendant's return to the United States considerably more difficult than would the simple fact of his conviction, his argument that he left simply to avoid imprisonment, and not the additional burden of deportation, is unpersuasive.

■ The denial of a motion for reduction of sentence will not be disturbed on appeal absent a clear abuse of discretion. *United States v. Krueger,* 454 F.2d 1154,

1155 (9th Cir. 1972). There was no such abuse here.

AFFIRMED.