891 F.2d 296
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stanley REPPUCCI, Defendant-Appellant.
 Nos. 89-10025, 89-10027 and 89-10028.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 5, 1989*.
Decided Dec. 6, 1989.
 
 Before SKOPIL, FLETCHER, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Stanley Reppucci appeals the denial without explanation of his Rule 35 motion requesting a sentence reduction based on the disparity between his sentence and that of a later-sentenced, more culpable co-conspirator. We affirm.
 
 FACTS
 The Indictments
 
 3
 Defendant Stanley Reppucci was charged in three indictments, each with several counts. The first involved a marijuana purchase in Florida; it was transferred to Nevada under Rule 20. The second concerned an attempted marijuana purchase in Nevada, and the third, transactions in counterfeit watch dials.
 
 
 4
 The first indictment resulted from a two-year Florida FBI and sheriff's department investigation. Reppucci and two codefendants, Anthony Guarnieri, a caporegime in the Buffalo mafia, and Anthony Pelosi, purchased 300 pounds of marijuana from undercover officers in Florida and sold it in Massachusetts.
 
 
 5
 Later, Guarnieri and Reppucci tried to obtain more marijuana from a Nevada undercover marijuana import business, but the deal never materialized. The second indictment concerns this attempted transaction.
 
 
 6
 Later the same year, Guarnieri arranged to receive blank replica watch dials and to counterfeit them with high-dollar brand watch names. Reppucci was involved in conversations arranging transportation and helped Guarnieri deliver two hundred counterfeit dials to undercover agents. These actions are charged in the third indictment.
 
 
 7
 All parties agreed that Guarnieri was the most culpable participant in these activities; the government identified Reppucci as the second most culpable. The evidence also indicates that Reppucci behaved like a novice in the transactions and demonstrated unfamiliarity with drug dealing. The government proposed several deals Reppucci claimed to be able to pull off, but he usually was unable to get contraband that the government agents had requested. The Florida marijuana deal and the counterfeit watch deal were the only ones that ever produced anything.
 
 Reppucci's sentencing
 
 8
 Reppucci pled guilty in an all-encompassing plea bargain to three counts--one under each of the indictments: conspiracy to distribute a controlled substance, use of a communication facility to facilitate distribution of a controlled substance, and trafficking in counterfeit goods. The maximum sentence was 15 years.
 
 
 9
 When Reppucci first appeared for sentencing, he did not expect to appear before the judge who was on the bench. His attorney explained to the judge that although he still wanted his client to accept the plea bargain, Reppucci was not prepared to go forward with the plea then because he had expected a different judge. The attorney attempted to characterize the difference in judge as simply a surprise that Reppucci needed to assimilate. The judge responded that he was not offended, but that it would trouble him if Reppucci were "judge shopping."
 
 
 10
 Two days later, Reppucci returned to court for sentencing pursuant to the plea agreement. He received a nine-year prison sentence on the Florida marijuana count and two concurrent five-year probation sentences on the other two counts to run consecutive to the nine-year prison term.
 
 
 11
 The presentence report indicated that Reppucci had good family relationships with his parents, wife, and step-daughters. He had been significantly involved with bookmaking. Reppucci grew up in a family where bookmaking was accepted practice; and he did not feel that it was wrong, in spite of his run-ins with the justice system. Reppucci had been convicted previously of promoting gambling, petty larceny, conspiracy to operate an illegal gambling business (twice), and promoting gambling. Although records are unavailable for the first two charges, Reppucci plead guilty to the final three.
 
 
 12
 The sentencing report indicates that Reppucci felt remorse for his involvement in the current criminal activities and that he believed it was the first wrongdoing in his life. He got involved because of financial difficulty. The presentence report, however, concludes that Reppucci's current criminal activity demonstrates that his previous contacts with the justice system had not created any respect for the law and that he therefore should receive more than probation. At the time of his sentencing, Reppucci and his wife had a new legitimate business that was doing well.
 
 
 13
 In the sentencing hearing, the court approved of Reppucci's family relationships and agreed that he clearly had not been previously involved in drugs. He also agreed that Reppucci's involvement was as his attorney characterized it: naive and limited. He asserted that Reppucci's circumstances were indeed different than his codefendants', that he was intelligent and had a good family background, in spite of the family's acceptance of bookmaking. The judge continued, "I have a little bit the feeling that where much is given, much is required; and I think society has reason to expect a little more from a Repucci [sic ] who's had some opportunities and who is blessed with some skills and intellectual talents." The court asserted that Reppucci had shown "a disposition to engage in illegal conduct and now to engage in what most consider to be a really diabolical business." Finally, the court told Reppucci that, no matter what Reppucci thought, "gaming illegally is breaking the law."
 
 Codefendants' sentencing
 
 14
 Guarnieri was convicted of the same three counts as Reppucci plus a fourth in New York involving the manufacturing of silencers. Guarnieri's Florida marijuana case was not transferred, and the Florida court sentenced him to two years in prison. In a plea agreement on the Nevada charges, he and the prosecutor had agreed that his Florida sentence would represent the maximum Nevada sentence. The same judge who had sentenced Reppucci "reluctantly accepted" this agreement. After Reppucci had already been sentenced, the judge sentenced Guarnieri to two years incarceration on the Nevada marijuana charge, to run concurrently with his Florida sentence, and five years probation for the counterfeit charge to run consecutively to the prison sentence. In the New York case, Guarnieri was sentenced to two years to run concurrent to his other prison terms. For the four convictions, then, Guarnieri would serve a total of two years in prison.
 
 
 15
 Pelosi was convicted in both marijuana cases and was sentenced to two years imprisonment and five years probation thereafter. Another codefendant in the Nevada marijuana case received probation despite having the most extensive arrest and conviction record of any of the defendants (over twelve felony convictions). Two other codefendants in the counterfeiting case received probation.
 
 Rule 35 motion
 
 16
 After Guarnieri had been sentenced, Reppucci filed a Rule 35 motion, requesting that the court reduce or modify his sentence based on the disparity between his and his codefendants' sentences. Reppucci objected chiefly to the disparity between his and Guarnieri's sentence, particularly in light of Guarnieri's greater culpability and status as a caporegime in the mafia. The United States attorney authorized Reppucci to include in his Rule 35 motion that the government was not opposed to the court reconsidering Reppucci's sentence because the plea negotiations in the entire case resulted in sentences that were disparate in relation to culpability. (The government in its brief now states that it does not concede disparity.) The court denied Reppucci's Rule 35 motion without giving reasons.
 
 DISCUSSION
 I. Sentence Disparity
 
 17
 Reppucci contends the district court abused its discretion in two ways: by sentencing him to a significantly greater sentence than Guarnieri, the more culpable defendant with a stronger criminal connection, and by considering his strong family background and previous uninvolvement with drug trafficking as an aggravating rather than a mitigating factor. Reppucci also contends that the court may have had other unspoken reasons--a desire to deter other law-abiding citizens from becoming involved in drugs or to penalize Reppucci for forum shopping. There is no support in the record for these last two contentions.
 
 
 18
 A district court's sentence or denial of a Rule 35 motion for reduction of sentence should not be disturbed on appeal absent clear abuse of discretion. United States v. Ruffen, 780 F.2d 1493, 1495 (9th Cir.) (Rule 35 denial), cert. denied, 479 U.S. 963 (1986); United States v. Chiago, 699 F.2d 1012, 1014 (9th Cir.) (challenge to sentence), cert. denied, 464 U.S. 854 (1983); United States v. Kouwenhoven, 602 F.2d 234, 238 (9th Cir.1979) (Rule 35 denial). Sentencing judges have almost unreviewable discretion as long as the sentences fall within statutory limits. United States v. Tucker, 404 U.S. 443 (1972); United States v. Garrett, 680 F.2d 650, 652 (9th Cir.1982). Disparity between codefendants does not by itself constitute abuse of discretion. United States v. Endicott, 803 F.2d 506, 510 (9th Cir.1986) (petitioner's two-year sentence plus three years probation and no criminal history was not abuse of discretion, though codefendant received six months in jail plus five years probation, was more culpable, and had prior criminal history); Garrett, 680 F.2d at 652 (no abuse of discretion where petitioners more culpable than codefendant received lighter sentence).
 
 
 19
 There are well-established exceptions to the general rule of nonreviewability for sentences. A sentence that penalizes a defendant for exercising a constitutional right is reversible. United States v. Capriola, 537 F.2d 319 (9th Cir.1976) (reason for disparity evidently the petitioners' exercise of right to stand trial, contrasted with co-conspirators' guilty pleas), limited by United States v. Hall, 778 F.2d 1427 (9th Cir.1985). A district court also cannot use illegally seized evidence as a factor in sentencing. Verdugo v. United States, 402 F.2d 599, 611 (9th Cir.1968), cert. denied, 402 U.S. 961 (1971). A court must exercise its discretion; failure to exercise discretion is abuse. Dorszynski v. United States, 418 U.S. 424, 443 (1974) ("limited review is available when sentencing discretion is not exercised at all," and Federal Youth Corrections Act applauded for encouraging courts to exercise discretion); United States v. Lopez-Gonzales, 688 F.2d 1275 (9th Cir.1982) (automatically imposing the maximum penalty and ignoring individual circumstances is abuse of discretion). Sentences are reversible if based in part on inaccurate information. Tucker, 404 U.S. at 446-49 (judge considered two previous convictions later found constitutionally invalid); Townsend v. Burke, 334 U.S. 736, 739-40 (1948) (defendant without counsel to correct judge's consideration of a prior dismissed charge and two prior charges on which he was found not guilty); United States v. Weston, 448 F.2d 626, 631 (9th Cir.1971) (judge based sentence on damaging unsupported hearsay in sentence report), cert. denied, 404 U.S. 1061 (1972). An appellate court can reverse if the sentence is based on "unfounded assumptions or groundless inferences." United States v. Safirstein, 827 F.2d 1380, 1385-86 (9th Cir.1987) (judge based sentence on improper inference of drug trafficking).
 
 
 20
 Reppucci does not fall within any of these exceptions to the general nonreviewability of pre-Sentencing Guidelines cases. The sentencing hearing record includes not only the judge's notice of Reppucci's social and family history (Reppucci's focus) but also indicates that the judge found that Reppucci's past criminal history justified his sentence. We cannot agree that this was an abuse of discretion. See United States v. Endicott, 803 F.2d 506, 510 (9th Cir.1986) (appellate review is limited, and the sentences fell within statutory limits without infringing Endicott's right to stand trial); United States v. Beecroft, 608 F.2d 753 (9th Cir.1979) (a judge has wide discretion in considering relevant facts from a defendant's personal history and occupation). United States v. Barker does not indicate a contrary result under the facts of Reppucci's case. 771 F.2d 1362 (9th Cir.1985) (where judge gave maximum sentences to all appellants, three factors together indicated that the judge based the sentences more on his personal views of the crime than on individual evaluation of each defendant).
 
 
 21
 II. Refusal to Give Reasons for Denying Rule 35 Motion
 
 
 22
 A trial court must give reasons for disparity in sentencing between codefendants only where the disparity may have resulted from infringement of a defendant's constitutional rights. United States v. Hall, 778 F.2d 1427 (9th Cir.1985). Reppucci alleges that the disparity between his and Guarnieri's sentences infringes his constitutional rights, namely the fifth amendment due process and equal treatment guarantees and the eighth amendment prohibition of cruel and unusual punishment.
 
 
 23
 In United States v. Capriola, this circuit addressed a sentence disparity between co-conspirators who plead guilty and those who went to trial. 537 F.2d 319 (9th Cir.1976). The court observed that the record was not explicit enough to give a reason for the disparity other than the defendants' different decisions whether to exercise their right to trial. Id. at 320. The court held that when the greater sentence may have been based upon a defendant's decision to exercise this constitutional right, "the sentencing judge must record an explanation." Id. at 321.
 
 
 24
 Hall limited Capriola to its facts. 778 F.2d at 1427. Hall argued that any disparity in sentencing between similar codefendants must be explained on the record. Id. at 1428. The court disagreed, holding that the district court is not required to explain the basis for a sentencing decision unless the defendant alleges that the sentence violates constitutional rights. Id.
 
 
 25
 The district court cited Hall to justify its refusal to give reasons for denying Reppucci's Rule 35 motion and correctly stated that Reppucci had not alleged any constitutional violations. On appeal, however, Reppucci alleges that the sentence disparity violates his rights to due process, equal treatment, and freedom from cruel and unusual punishment.
 
 
 26
 A. Due process.
 
 
 27
 The sentencing process is a critical stage of a criminal proceeding and as such must satisfy due process clause requirements. Gardner v. Florida, 430 U.S. 349, 358 (1977) (due process violation when district court based death sentence in part on information that defendant had no opportunity to deny or explain); Brothers v. Dowdle, 817 F.2d 1388, 1390 (9th Cir.1987) (district court erred in considering "contacts with the law" falling short of convictions as aggravating circumstances in sentencing). The fundamental requirement of due process is "the opportunity to be heard." Mathews v. Eldridge, 424 U.S. 319, 333 (1976); Armstrong v. Manzo, 380 U.S. 545, 552 (1965); Grannis v. Ordean, 234 U.S. 385, 394 (1914). "More precisely," the Supreme Court has stated,
 
 
 28
 our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
 
 
 29
 Mathews, 424 U.S. at 334.
 
 
 30
 Reppucci argues that the court should apply these factors here. See United States v. Pugliese, 805 F.2d 1117, 1122 (2d Cir.1986) (evaluating due process at sentencing under these factors and concluding that use of transcript of sentencing proceeding before another judge on a related event did not violate due process). Reppucci also claims that these factors favor requiring the court to provide reasons for denying his Rule 35 motion. Hall forecloses this argument: the court decided, essentially, that a sentencing court does not violate a defendant's due process rights by not giving reasons for sentence disparity, unless the sentencing considerations violate a defendant's constitutional rights. Claiming that due process is the constitutional right that has been violated is tautological and in this case does not justify requiring reasons for a Rule 35 denial under ninth circuit law.
 
 
 31
 In addition, the factors Reppucci says should be applied do not favor his position, essentially because Reppucci has already been heard. At Reppucci's sentencing hearing, the court heard Reppucci's reasons why he should receive a lenient sentence. He also heard the judge's reasons for the sentence he received. The court heard Reppucci's rationale for reconsidering those reasons in his Rule 35 motion. It is difficult to understand what else the judge might have said that Reppucci did not already know or suspect. Under the Mathews factors, Reppucci's interest is great. The government's interest in truth and justice is great and the financial cost of giving reasons is not high. The key, however, is that, in this case, the benefit from the judge's giving additional reasons and the risk from not giving them are both minimal because the reasons for leaving the sentence intact would certainly be the same reasons given at the sentencing hearing. We conclude that due process concerns do not require the court to give additional reasons for denying Reppucci's rule 35 motion.
 
 
 32
 B. Cruel and unusual punishment.
 
 
 33
 Reppucci contends that the disparate sentence inflicts cruel and unusual punishment, which justifies requiring the district court to explain its Rule 35 denial. It is clearly established, however, that a sentence within statutory limits will not be overturned on appeal as cruel and unusual. United States v. Zavala-Serra, 853 F.2d 1512, 1518 (9th Cir.1988); United States v. Washington, 578 F.2d 256, 258 (9th Cir.1978); see also United States v. Rosenberg, 195 F.2d 583, 604-08 (2d Cir.1952) (no federal decision has held sentence cruel and unusual when the statute authorizing it was constitutional and this case is no exception), cert. denied, 344 U.S. 838 (1952).
 
 
 34
 Reppucci claims nonetheless that this court should undertake a Solem v. Helm disproportionality analysis. 463 U.S. 277, 290-92 (1983) (the sentencing court should consider (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on similarly situated criminals in the same jurisdiction, and (3) the sentences imposed on similarly situated criminals in other jurisdictions). The Supreme Court agreed in Solem that successful noncapital proportionality challenges would be rare. Id. at 289-90; United States v. Yarbrough, 852 F.2d 1522, 1546 (9th Cir.1988) (finding noncapital sentence not disproportionate under Solem analysis), cert. denied, 109 S.Ct. 171 (1988); cf. Zavala-Serra, 853 F.2d at 1518 (finding noncapital sentence not disproportionate under Solem analysis). Reppucci mistakenly compares his sentence only to his codefendant's. He offers no evidence that his sentence is disparate when compared to all similarly situated defendants in his and other jurisdictions and most likely cannot since the sentence falls within statutory limits.
 
 
 35
 Reppucci's eighth amendment allegation does not justify requiring the district court to give reasons for his Rule 35 denial.
 
 
 36
 C. Equal treatment.
 
 
 37
 Reppucci also alleges that the disparity in sentences denies him equal protection under the fifth amendment. This court has already responded to this argument. Where a husband and wife were both convicted on the same drug charges, the district court imposed a lighter sentence on the wife because she had one child, with another on the way, and justice did not require taking both parents away. United States v. Flores, 540 F.2d 432 (9th Cir.1976). The appellant alleged that the wife received favorable treatment because of her pregnancy, violating the equal protection clause. The ninth circuit disagreed, stating that "there is no requirement that two people convicted of the same offense receive identical sentences." Id. at 438; see also Williams v. Illinois, 399 U.S. 235, 243 (1970) (no requirement of identical sentences for persons convicted of same crime) (dicta); cf. Marcella v. United States, 285 F.2d 322, 324 (9th Cir.1960) (prosecutor exercising discretion as to whom he will charge does not violate equal protection clause), cert. denied, 366 U.S. 911 (1961). The disparate sentencing did not violate Reppucci's right to equal treatment under the fifth amendment, and so the alleged constitutional violation does not justify requiring the court to state reasons for denying the Rule 35 motion.
 
 CONCLUSION
 
 38
 Even if we were to fault the district court for accepting the plea agreement tendered by Reppucci's co-conspirators, that would not advance Reppucci's argument. The district court did not abuse its discretion in denying Reppucci's Rule 35 motion nor in refusing to give reasons for the Rule 35 denial.
 
 
 39
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the Courts of this Circuit except as provided by Circuit Rule 36-3