**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Juan A. BENAVIDEZ–BENAVIDEZ,**
**Defendant–Appellant.**

**No. 99–10270.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 2000

Filed June 28, 2000

S. Jonathan Young, Tucson, Arizona, for the defendant–appellant.

Richard E. Gordon, Assistant United States Attorney, Tucson, Arizona, for the plaintiff–appellee.

Before: WALLACE, PREGERSON and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

This appeal presents the question whether the district court properly excluded unstipulated polygraph evidence. We conclude that it did and affirm the judgment of conviction.

I

Juan A. Benavidez–Benavidez ("Benavidez") was arrested, along with Blanca Veronica Ruiz–Aguiar, as he tried to enter the United States in a van at the Lukeville, Arizona port of entry. When questioned by customs agents at the primary inspection area, Benavidez stated that he had lost his border crossing card in Mexico and requested directions to the nearest Department of Motor Vehicles to see if he could have his driver's license reinstated. He denied that he was bringing anything into the country. An agent knocked on the side of the van and thought it sounded dense and solid. Upon opening the rear of the van, the agent noticed a sweet perfume or air freshener type smell. After further investigation, the agents discovered seventy-six bundles of marijuana, weighing approximately 169 pounds, in the doors and walls of the van.

A customs agent interviewed Benavidez. The interview was not tape recorded and the substance is a matter of dispute. The customs agent testified that Benavidez stated that he had gone to Rocky Point, in Mexico, for his son's birthday. While in Rocky Point, Benavidez's wallet was stolen and thus he did not have his green card or driver's license. The customs agent also testified that Benavidez claimed that he had obtained the van from a church organization that wanted him to drive it to the United States to pick up a load of clothing in Phoenix. In exchange, Benavidez was to keep the van, which was valued at approximately $1,200. The agent testified that he told Benavidez that the story was preposterous and that the defendant eventually admitted that he was aware that the marijuana was in the van and confessed that he had agreed to transport the marijuana to Phoenix for a third party in exchange for receiving ownership of the van. The defendant denied confessing the crime to the customs agent. He also denied telling the agent that he was to receive ownership of the van as compensation.

Prior to trial, Benavidez took a polygraph examination and sought to introduce the results of the examination at trial, specifically the measured responses of his negative answers to the following questions:

- Did you admit to Agent Cherry that you were knowingly transporting marijuana?
- Did you tell Agent Cherry that you knew there was marijuana in the van when you crossed the border?
- Did you know there was marijuana in the van when you crossed the border into the United States?

In response, pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the district court held a hearing to consider the admissibility of the proffered evidence. At the hearing, Special Agent James Murphy, a twenty-eight-year veteran of the FBI, testified on behalf of the government. Dr. Charles Honts testified on behalf of Benavidez. The hearing took place on October 19–20, 1998.

Voluminous exhibits were offered at the hearing. Most of these exhibits consisted of scientific papers pertaining to such issues as the reliability of polygraphs, the use of countermeasures by persons taking polygraphs, and the relative merits of various techniques for both administering and studying polygraphs. The district court issued its ruling on December 18, 1998 and held the evidence inadmissible on three different grounds: Fed.R.Evid. 403, 702, and 704(b). Benavidez challenges each of these rulings as well as the qualification of James Murphy to testify as an expert.

■ We review a district court's decision to exclude expert testimony for abuse of discretion. *See United States v. Scholl*, 166 F.3d 964, 971–72 (9th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 176, 145 L.Ed.2d 149 (1999). Similarly, we also review the determination of whether an individual's qualifications are sufficient to testify as an expert for abuse of discretion. *See United States v. Garcia*, 7 F.3d 885, 889 (9th Cir.1993). Under the abuse of discretion standard, we cannot reverse unless we have a definite and firm conviction that the district court committed a clear error of judgment. *See Valley Eng'r, Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir.1998).

## II

The question of admissibility of unstipulated polygraph evidence has had a long history in this circuit and around the country. The most prominent national rejection of deception detection evidence was made in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), in which the court held that a systolic blood pressure deception test had "not gained such standing and scientific recognition among physiological and psychological authorities" as would justify admission of expert testimony on the subject. *Id.* at 1014. Although dealing with deception testing, the rationale in *Frye* became nationally accepted as the standard for the admissibility of scientific evidence and the basis, in part, for Fed. R.Evid. 702.

Prior to 1986, evidence of the results of a polygraph examination was potentially admissible. *See United States v. De Betham*, 470 F.2d 1367, 1368 (9th Cir.1972); *see also Herman v. Eagle Star Ins. Co.*, 396 F.2d 427, 427 (9th Cir.1968) (holding that polygraph evidence could be admitted by stipulation of the parties). However, we afforded district courts "wide discretion in refusing to admit the testimony." *United States v. Marshall*, 526 F.2d 1349, 1360 (9th Cir.1975). It was no exaggeration to say in 1975 that "[o]ur circuit has been inhospitable to contentions that a district court has abused its discretion in refusing to admit polygraphic evidence." *United States v. Demma*, 523 F.2d 981, 987 (9th Cir.1975) (en banc). Indeed, between 1971 and 1986, we affirmed a district court's exercise of discretion to exclude polygraph evidence on at least eighteen occasions.[1] *See Brown v. Darcy*, 783 F.2d 1389, 1394 n. 11 (9th Cir.1986).

In 1986, we assessed the state of the law and polygraph science and adopted a *per se* rule that unstipulated polygraph evidence "was inadmissible as technical or scientific evidence under Fed.R.Evid. 702

---

1. *See, e.g., United States v. Givens*, 767 F.2d 574, 585–86 (9th Cir.1985); *United States v. Johnson*, 735 F.2d 1200, 1203 (9th Cir.1984); *United States v. Falsia*, 724 F.2d 1339, 1341–42 (9th Cir.1983); *United States v. Ferris*, 719 F.2d 1405, 1408 (9th Cir.1983); *United States v. Eden*, 659 F.2d 1376, 1382 (9th Cir.1981); *United States v. Glover*, 596 F.2d 857, 867 (9th Cir.1979); *United States v. McIntyre*, 582 F.2d 1221, 1226 (9th Cir.1978); *United States v. Radlick*, 581 F.2d 225, 229 (9th Cir.1978); *United States v. Benveniste*, 564 F.2d 335, 338–39 (9th Cir.1977); *United States v. Flores*, 540 F.2d 432, 436–37 (9th Cir.1976); *Marshall*, 526 F.2d at 1360; *Demma*, 523 F.2d at 987; *United States v. Watts*, 502 F.2d 726, 728 (9th Cir.1974); *United States v. Bagsby*, 489 F.2d 725, 726–27 (9th Cir.1973); *United States v. Alvarez*, 472 F.2d 111, 113 (9th Cir. 1973); *United States v. Jenkins*, 470 F.2d 1061, 1064 (9th Cir.1972); *United States v. Salazar–Gaeta*, 447 F.2d 468, 469 (9th Cir. 1971); *United States v. Sadrzadeh*, 440 F.2d 389, 390 (9th Cir.1971).

because it 'does not assist the trier of fact to understand the evidence or to determine a fact in issue.' " *Brown,* 783 F.2d at 1395. The rationale in *Brown* was founded in large part on "the questionable accuracy of polygraph examinations" and the lack of consensus on their reliability. *Id.*

The *per se Brown* rule remained the law of the circuit until the Supreme Court decided *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *Daubert* held that Fed. Rule Evid. 702 supplanted the *Frye* inquiry with a "flexible" inquiry, *id.* at 594, 113 S.Ct. 2786, that assigned "to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand," *id.* at 597, 113 S.Ct. 2786. In *Daubert* the Court set out four factors to be reviewed when applying Rule 702: (1) whether the theory or technique can be or has been tested, (2) whether the theory or technique has been subjected to peer review, (3) whether the error rate is known and standards exist controlling the operation of the technique, and (4) whether the theory or technique has gained general acceptance. 509 U.S. at 593–94, 113 S.Ct. 2786.

Following *Daubert,* the Fifth Circuit concluded that its *per se* rule excluding polygraph evidence had been effectively overruled by the decision. *See United States v. Posado,* 57 F.3d 428, 431–34 (5th Cir.1995). We joined the Fifth Circuit in *United States v. Cordoba,* 104 F.3d 225, 228 (9th Cir.1997) ("*Cordoba I* "), holding that *Daubert* had implicitly overruled *Brown.* However, we expressed no "new

enthusiasm for admission of unstipulated polygraph evidence" in *Cordoba I,* noting its "grave potential for interfering with the deliberative process." *Id.* On remand, the district court excluded the evidence after conducting a *Daubert* hearing on the basis of both Fed.R.Evid. 702 and 403. *See United States v. Cordoba,* 991 F.Supp. 1199 (C.D.Cal.1998) ("*Cordoba II*"). We affirmed the district court in *United States v. Cordoba,* 194 F.3d 1053 (9th Cir.1999) ("*Cordoba III*").[2] After *Cordoba III,* we held that Rule 704(b) prohibits the admission of polygraph evidence offered for the purpose of proving the defendant's mental state. *See United States v. Campos,* 217 F.3d 707 (9th Cir.2000).

Thus, with the exception of exclusion of evidence under rule 704(b), our *Cordoba* decisions returned our jurisprudence to its pre-*Brown* state, affording the district court "wide discretion in refusing to admit the testimony." *Marshall,* 526 F.2d at 1360. In doing so, we did not mandate a new seriatim formalistic inquiry, requiring the district courts to conduct a *Daubert* hearing in each case. Indeed, to do so would have run contrary to our settled law that allows rejection *either* on the basis of foundation *or* prejudice. *See Marshall,* 526 F.2d at 1360. After *Cordoba I,* district courts are free to reject the admission of polygraph evidence on the basis of any applicable rule of evidence without analyzing all other potential bases of exclusion. Thus, for example, an exclusion based solely on Rule 403 affords us "ample authority for affirming the trial

---

**2.** Following *Cordoba I,* the Supreme Court issued its opinion in *United States v. Scheffer,* 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998), holding that Military Rule of Evidence 707, which makes polygraph evidence inadmissible in court-martial proceedings, did not unconstitutionally abridge the right to present a defense. *See id.* at 305, 118 S.Ct. 1261. *Scheffer* did not consider the question of a judge-created *per se* rule in the context of Fed. R Evid. 702 or *Daubert.* Indeed, *Cordoba I* was specifically referenced but not overruled in *Scheffer. See* 523 U.S. at 311, 118 S.Ct. 1261. Following *Scheffer,* the Supreme Court reaffirmed and expanded *Daubert* in *Kumho Tire Company, Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Subsequently, we acknowledged in *United States v. Hankey,* 203 F.3d 1160, 1167 (9th Cir.2000) that *Kumho* extended to all expert testimony. Thus, although the policy discussion in *Scheffer* is valuable, *Scheffer* did not impact our holding in *Cordoba I* that unstipulated polygraph testimony is potentially admissible under the Federal Rules of Evidence.

court." *Cordoba III,* 194 F.3d at 1064 (Goodwin, J., concurring). In short, although a district court may conduct a Rule 702, 403 or 704(b) examination, it is not required to undertake each of those inquiries before denying admission of the evidence. Of course, a court may choose to do so to provide alternative reasons for excluding the evidence, as the district court did in *Cordoba II,* and nothing in this opinion precludes counsel from objecting on alternative grounds.

### III

Our historical exegesis is prompted by defendant's claim of error in this case. In considering the admissibility of the defendant's proffered evidence, the district court held a searching and thorough hearing. At the conclusion, the court held that the *Daubert* factors had been met, except for "the requisite general acceptance in the relevant scientific community." Thus, the court denied admission of the evidence pursuant to Fed.R.Evid. 702.

The court also concluded that admission of the polygraph evidence would be unduly prejudicial and that its probative value was outweighed by the danger of unfair prejudice, citing the special risk that the jury might give excessive weight to the polygrapher's conclusions. Thus, the court held that the polygraph evidence was also inadmissible under Fed.R.Evid. 403. Additionally, the court made a passing reference to the evidence's inadmissibility under Rule 704(b).[3]

■ Benavidez asserts that the district court had no choice but to admit the evidence because the defendant "won" the *Daubert* hearing and that the district court could not reject the evidence simply because it had not achieved acceptance in the scientific community. Despite defendant's argument that the district court's Rule 702 analysis was erroneous because it relied

solely on a single *Daubert* factor, his argument is without merit.

■ The district court's exclusion of the polygraph evidence under Fed.R.Evid. 403 is, standing alone, sufficient. As we noted in discussing this very issue a quarter-century ago, "a trial court will rarely abuse its discretion by refusing to admit the evidence, even for a limited purpose and under limited conditions." *Marshall,* 526 F.2d at 1360. After careful examination of the record, we conclude that the district court did not do so in this instance. Certainly, as able defense counsel urged at oral argument, the courts should allow science to evolve in the courtroom. However, this evolution will not come at the expense of trial court discretion in assessing whether probative value exceeds the prejudicial effect on the jury.

■ Having found exclusion of the evidence proper under Rule 403, we need not reach the issue of whether the district court also properly excluded the evidence under Rules 702 or 704(b), or improperly credited the government's polygraph expert. The reason for this is that, unlike other evidentiary exclusions which may bar evidence for one purpose only to have it admitted for another purpose, exclusion under Rule 403 is absolute. Once the probative value of a piece of evidence is found to be substantially outweighed by the danger of unfair prejudice, there is no other evidentiary rule that can operate to make that same evidence admissible. In this way, Rule 403 can be viewed as a gateway, albeit a very wide one, through which all evidence must pass prior to admission at trial. Although a trial court may choose to analyze evidence admissibility by assessing the effect of other rules of evidence first, it is under no compulsion to do so. It is equally acceptable to perform a Rule 403 analysis prior to undertaking any other

**3.** Only one aspect of the polygraph examination in this case was potentially impacted by Rule 704(b): "Did you know there was marijuana in the van when you crossed the border into the United States?" Thus, application of *Campos* would not have settled the admissibility of all the tendered polygraph evidence in this case.

evidentiary inquiry. In a case such as this one, where evidence has been ruled inadmissible under Rule 403, and the district court has not abused its discretion in so doing, there is no need to proceed with further evidentiary analysis.

AFFIRMED