**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Herng Sing WANG, Defendant–Appellant.**

**No. 93–50213.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 9, 1995.

Decided Feb. 24, 1995.

**503**

Robert Ramsey, Jr., Ramsey & Price, Los Angeles, CA, for defendant-appellant.

Richard E. Drooyan and Edward B. Moreton, Jr., Asst. U.S. Attys., Los Angeles, CA, for plaintiff-appellee.

Before: CANBY and NOONAN, Jr., Circuit Judges, and KING,* District Judge.

NOONAN, Circuit Judge:

Herng Sing Wang appeals his conviction of conspiracy to bring aliens unlawfully into the United States in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324(a)(1)(A) and of his conviction of attempting to bring aliens into the United States in violation of 8 U.S.C. § 1324(a)(1)(A) and 18 U.S.C. § 2. We affirm his convictions.

### FACTS

The government established by evidence the following facts:

On September 7, 1992, Wang and two of his codefendants, Loi Fhuoc Chau and Tham Hnu Vo, were present in the harbor at Moss Landing, California. They boarded the New Star, a 65 foot fishing boat, opened up the boat and fired up the motors. Early on the morning of September 8 the New Star put out to sea. Wang was inside its lighted main cabin.

The New Star made a rendezvous at sea with a Taiwanese trawler. Aboard the trawler were Wang's codefendants Qi Li and Chang Ching Chiang and 158 Chinese, aliens to the United States and would-be emigrants from China. These unfortunate persons had made arrangements with unindicted men in China to be taken from China to the United States for approximately $30,000 per person, to be paid in part prior to the departure and in part on arrival in the United States.

Once the rendezvous with the trawler had been effected, Wang took charge of the transfer of the emigrants to the New Star, directing Chiang to have the emigrants jump from the trawler to the New Star. Wang told these people as they came aboard the fishing boat that it would take only one day to reach America and that they should throw their belongings overboard.

Shortly after the transfer was completed, the New Star began to take on water, and water leaked into the hold of the boat and the engine stopped. Wang ordered Li, Lin and Chiang to organize bailing and he himself directed the emigrants to begin bailing, telling them that if they did not bail they would be thrown overboard.

The New Star spent four days and three nights drifting. A passing Japanese freighter, the Forestall Esmeralda, then came in sight. Wang ordered the emigrants to go below deck so they would not be seen, telling them that whoever came above deck would be thrown into the water. The Forestall Esmeralda came alongside and rescued all aboard. The transfer was directed by Wang and Chiang, Wang threatening the emigrants that if anyone was disruptive "that person will be thrown overboard." Aboard the Forestall Esmeralda, Wang told the emigrants not to roam around and to conceal themselves "so as not to be discovered by the United States government." Wang ordered Li, Lin and Chiang to collect money with which to bribe the captain of the Forestall Esmeralda. He also told the emigrants that

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

if they were caught by the Americans and told the truth "our group in America will kill you."

## PROCEEDINGS

Wang and his codefendants were captured, indicted and went to trial. Wang took the stand and testified that he had left China on June 23, 1992 with the other emigrants and had been taken with them on the Taiwanese trawler to the New Star. He denied ever having been in America.

Wang was convicted on both counts and now appeals.

## ANALYSIS

Wang attacks the sufficiency of the evidence against him. This ground for his appeal borders on the frivolous in the face of the substantial, not incredible evidence against him. He does make a plausible objection to one question asked by the prosecution of Richard Scott Morris, an expert on the subject of smuggling of aliens, who was questioned by the prosecution as follows:

Q. Have you formed an opinion as to whether the defendants in this case were part of a group of smugglers smuggling Chinese aliens into the Country?

Over the objection of counsel, Morris answered:

A. Yes, I formed an opinion.

Q. What is your opinion?

A. My opinion is yes, they were involved in an organization to smuggle aliens into the United States.

■ Wang contends the question was improper and prejudicial. Rule 704, Federal Rules of Evidence provides as follows:

(a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

(b) No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental

state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Taken in sequence, the two questions focused on whether the defendants were part of a group of smugglers and, in particular, "involved in an organization to smuggle aliens." In substance, Morris was asked if the defendants were involved in a conspiracy, and his opinion was arguably being solicited as to whether Wang had the mental state constituting an element of the crime charged.

■ We have given verbal recognition to Rule 704(b)'s requirement that an expert not be allowed to testify as to a mental element constituting an element in the crime nor as to the defendant's guilt or innocence. E.g., *United States v. Fleishman*, 684 F.2d 1329, 1335–36 (9th Cir.1982), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). However, we will not hold a district court's admission of testimony to be error unless it was "manifestly erroneous." *United States v. Espinosa*, 827 F.2d 604, 613 (9th Cir.1987), *cert. denied*, 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988). In *United States v. Kinsey*, 843 F.2d 383, 389 (9th Cir.1988), *cert. denied*, 487 U.S. 1223, 108 S.Ct. 2882, 101 L.Ed.2d 916 (1988), we held that the district court did not abuse its discretion when it permitted an expert narcotics officer to testify that a defendant, charged with conspiracy to distribute cocaine base and with possession with intent to distribute cocaine base, was "involved in the distribution" of the cocaine found in a motel room. We added that the evidence of the defendant's guilt "was so overwhelming and convincing" that any error in the admission of the expert's testimony was harmless. *Id.* at 389. Under *Kinsey*, the answer given by Morris was admissible in the exercise of the district court's discretion. And, as in *Kinsey*, any error was harmless because of the quantity of evidence against the defendant. Nonetheless, as *Kinsey*'s invocation of harmlessness implied, and as we now make explicit, the better practice would be for the prosecutor not to ask such questions arguably bearing on intent and for a district court not to find such answers admissible. Where the evidence against a

defendant is overwhelming, as it was in *Kinsey* and is here, the question is overkill; it goes to the verge of Rule 704; the court falls back on its harmlessness in order not to overturn the conviction; and if the admission was harmless, by the same token the government did not need the answer.

Wang also objects to the testimony of Edward Vaughn, the witness who saw Wang on the New Star at Moss Landing on September 7 and 8, 1992. Vaughn was shown photographs of Wang and two of the other defendants after Wang's indictment but prior to the trial; he was also shown photographs of seven other defendants including Wang shortly before the trial.

■ Out-of-court identification of a defendant is admissible, along with the resulting in-court testimony, if factors indicating reliability outweigh the effect of the suggestive presentation of the photographs. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Here Vaughn had ample opportunity to view Wang aboard the New Star and actually spoke to him. Vaughn was highly interested in the goings on aboard the New Star because he himself had once worked on the boat. He was vigorously cross-examined and stood up under the cross-examination and impressed the district court as a "very sober and very discreet and very intelligent witness." His testimony was admissible.

The increase in Wang's sentence because of his role of supervisor in the conspiracy was well warranted by the evidence at trial.

**AFFIRMED.**