**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Teresa Maria CAMPOS, Defendant–
Appellant.**

**No. 97–50635.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 2000

Filed June 28, 2000

708

Before: WALLACE, PREGERSON and THOMAS, Circuit Judges.

Opinion by Judge THOMAS; Partial Concurrence and Partial Dissent by Judge PREGERSON.

THOMAS, Circuit Judge:

This appeal presents the question of whether unstipulated polygraph evidence concerning the defendant's mental state is admissible under Federal Rule of Evidence 704(b) when it involves the ultimate issue of *mens rea.* We conclude that it is not and affirm the judgment of conviction.

I

Teresa Maria Campos entered the United States at the San Ysidro Port of Entry in a white van. Upon inquiry at primary inspection, Campos denied that she was bringing anything back into the United States and stated that the van belonged to her boyfriend, Jose Antonio Lopez. The INS inspector observed that Campos appeared extremely nervous, with her hands gripped tightly on the steering wheel, and noticed the presence of a "space discrepancy" in the ceiling of the van. Based on these and other observations, Campos was referred to secondary inspection.

At secondary inspection, Campos told a second customs inspector that she was carrying alcohol, soap and medicine into the United States, but described Jose Antonio Lopez, the alleged owner of the van, as merely a friend. After Campos complied with his request to disembark from the van, the INS inspector searched the van and discovered eighty-nine packages—or 151 pounds—of marijuana in a ceiling compartment above the passenger side seat. Campos was arrested.

A federal grand jury subsequently charged Campos in a two count indictment with the importation and possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 952, 960 and 841(a)(1).

Frank Murphy, III, San Diego, California, for the defendant-appellant.

Antonio Hernandez, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee, on the brief and Daniel E. Butcher, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee, at oral argument.

Prior to trial, Campos underwent a polygraph test. During the polygraph examination, the examiner asked Campos two relevant questions:

Q.33: When you were driving the van on the twenty-fifth of January, did you know there were drugs in the van?

Answer: No.

. . .

Q.35: Before crossing the border on the twenty-fifth of January, did you know that there were drugs in the van?

Answer: No.

The polygraph examiner concluded that "[c]oncerning the relevant questions #33 and #35 examinee's responses were not typical of those associated with deception."

Campos sought admission of this polygraph evidence. In a pre-trial ruling, however, the district court precluded its admission pursuant to Fed.R.Evid. 704(b) and refused to conduct a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), to determine the admissibility of the polygraph results as scientific evidence under Fed.R.Evid. 702. In another pre-trial ruling, the court agreed to admit government expert testimony regarding the value of the marijuana seized from Campos, the structure of drug smuggling organizations, and that drug traffickers would not entrust "unknowing couriers" with large quantities of narcotics.

At trial, Campos claimed that she did not know that the van contained any marijuana and that she had gone to Tijuana, Mexico, only for a medical examination and to attend a party. After a two-day jury trial, a jury found Campos guilty on both counts. The district court sentenced Campos to 27 months in custody, a $200 penalty assessment and three years of supervised release.

## II

The district court did not improperly exclude the polygraph evidence tendered by Campos pursuant to Rule 704(b), nor did it err in declining to conduct a *Daubert* hearing. We review a district court's decision to admit or exclude expert testimony for an abuse of discretion. *See United States v. Morales*, 108 F.3d 1031, 1035 (9th Cir.1997) (en banc); *United States v. Cordoba*, 104 F.3d 225, 229 (9th Cir.1997). A district court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the facts. *See Morales*, 108 F.3d at 1035.

As originally envisioned, Federal Rule of Evidence 704 was intended to "specifically abolish[ ]" the prohibition "against allowing witnesses to express opinions upon ultimate issues." Fed.R.Evid. 704 advisory committee's notes. The rule, as adopted, consisted entirely of a version of the current subdivision (a), which deems "otherwise admissible" opinion testimony "not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704(a); Wright & Gold, Federal Practice and Procedure: Evidence § 6281 (1997). In abandoning the general rule against "ultimate issue" testimony, the Advisory Committee dismissed as "empty rhetoric" the rationale that ultimate issue testimony would "usurp[ ] the province of the jury." Adv. Ctte. Note to Rule 704 (citation omitted).

Congress subsequently enacted the Insanity Defense Reform Act of 1984, which amended Rule 704 to add subdivision (b).[1] *See* Pub.L. No. 98–473, §§ 401–406, 98 Stat.1937, 2057–68 (1984). Federal Rule of Evidence 704(b) provides a limited exception in criminal cases to the general rule

1. "The Insanity Defense Reform Act was passed in the wake of John Hinckley's acquittal of charges arising from his actions in shooting President Ronald Reagan and Press Secretary James Brady." *United States v. Cameron*, 907 F.2d 1051, 1061 (11th Cir. 1990). Along with amending Rule 704(b), the Act altered the test for insanity and placed upon the defendant the burden of proving insanity by clear and convincing evidence. *See* Charles A. Wright & Victor J. Gold, at § 6281; *see generally* 18 U.S.C. § 17.

that experts may testify as to their opinions on ultimate issues to be decided by the trier of fact. It states:

No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Congress added this provision out of a desire to "eliminate the confusing spectacle of competing expert witnesses testifying to directly contradictory conclusions as to the ultimate legal issue to be found by the trier of fact." S.Rep. No. 98–225 at 230–31 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3412–13 ("S.Rep.98–225"). Thus, with respect to a criminal defendant's mental state, Congress confirmed that "the *jury* is the lie detector." *United States v. Barnard,* 490 F.2d 907, 912 (9th Cir.1973) (emphasis added).

■ While Congress primarily targeted subdivision (b) towards limiting the use of psychiatric expert testimony on whether a defendant is sane or insane, our holding in *Morales* made clear that Rule 704(b) is not limited in "its reach to psychiatrists and other mental health experts," but rather, extends to all expert witnesses. *Morales,* 108 F.3d at 1036; *see also* S. Rep. 98–225 at 230–31. Moreover, the rationale for precluding ultimate opinion testimony applies to both the insanity defense and "to any ultimate mental state of the defendant that is relevant to the legal conclusion sought to be proven," such as premeditation in a homicide case or lack of predisposition in an entrapment case. S. Rep. 98–225 at 231. In light of *Morales,* Rule 704(b) clearly applies to expert polygraph testimony on ultimate issues.

■ Applying this rule to the facts here, it is clear that the district court did not abuse its discretion by excluding the testimony of the polygraph examiner. To convict Campos of importation and possession of marijuana with intent to distribute, the government had to prove that Campos knowingly and intentionally imported and possessed marijuana. *See* 21 U.S.C. §§ 841(a)(1) & 960. The district court would therefore have had to conclude that the examiner "would have stated an opinion or drawn an inference which would necessarily compel the conclusion" that Campos did not know that she possessed the marijuana and intentionally imported it into the United States. *Morales,* 108 F.3d at 1037.

During the motions hearing, the court inquired whether the polygraph examiner was "going to testify that—that she was asked whether or not she knew the drugs were in the van and she gave an answer, and in his opinion, that answer was truthful." Campos' counsel replied in the affirmative. Based on this response, the district court determined that the examiner's testimony would fall within 704(b)'s rule.

■ Such testimony falls squarely within the scope of Rule 704(b). "A prohibited 'opinion or inference' under Rule 704(b) is testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite *mens rea.*" *Morales,* 108 F.3d at 1037. The polygraph examiner's testimony that Campos was truthful in stating that she did not know that she was transporting marijuana leaves no room for inference, but rather, compels the conclusion that she did not possess the requisite knowledge.[2] *Compare id.* (even if jury believed testimony of defendant's accounting expert that defendant had a weak grasp of bookkeeping knowledge, "the jury

---

**2.** Our holding does not have the effect of excluding all polygraph evidence, because polygraph evidence relating to collateral issues will continue to be potentially admissible. *See Cordoba,* 104 F.3d at 228–29; *see* *also United States v. Posado,* 57 F.3d 428, 431 (5th Cir.1995) (polygraph questions relating to propriety of search resulting in charges for possession of marijuana in violation of § 841(a)(1)).

would still have had to draw its own inference from that predicate testimony to answer the ultimate factual question").

Campos' contention that her polygraph examiner would testify only to Campos' physiological responses to the polygraph examination and not reach an ultimate issue is of no account. Polygraph tests require the examiner to measure and interpret a set of "physiological correlates of anxiety" and, as described by a four-member plurality of the Supreme Court, to "offer[ ] an opinion to the jury about whether the witness—often, as in this case, the accused—was deceptive in answering questions about the very matters at issue in the trial." *United States v. Scheffer,* 523 U.S. 303, 313, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). There is no principled distinction in this case—as elicited in the dialogue between the district court and Campos' counsel—between the testimony of Campos' polygraph expert regarding her physiological responses to the questions posed during the examination and the conclusion from that testimony that she did not "know" that the van contained a significant amount of marijuana.

■ Nor did the district court err in failing to conduct a *Daubert* hearing to determine whether the polygraph evidence was admissible under Rule 702.[3] If evidence is inadmissible by application of one evidentiary rule, there is no need for a court to determine whether it satisfies predicate evidentiary standards pertaining to another rule. *See United States v. Marshall,* 526 F.2d 1349, 1360 (9th Cir. 1975). By properly determining that the

evidence was not admissible under Rule 704(b), the court obviated the need to conduct an evidentiary analysis under Rule 702 or Rule 403.

### III

■ Campos also argues that the district court erred by admitting testimony by a government expert that marijuana trafficking organizations do not use "unknowing couriers." Before the district court, she argued in a motion *in limine* that the testimony constituted improper "drug courier profile" evidence. We review this issue for an abuse of discretion. *See United States v. Beltran–Rios,* 878 F.2d 1208, 1210 (9th Cir.1989). Because "testimony that drug traffickers do not entrust large quantities of drugs to unknowing transporters is not drug courier profile testimony," *Cordoba,* 104 F.3d at 229–30, the district court did not abuse its discretion in admitting it.

■ On appeal, Campos also argues that the testimony was also improperly admitted as "ultimate issue" testimony under Rule 704(b). Because Campos failed to raise a specific objection to the testimony at trial based on Rule 704(b), we review the district court's decision in this respect only for plain error affecting substantial rights.[4] *See State of Arizona v. Elmer,* 21 F.3d 331, 334 (9th Cir.1994); *United States v. Muniz,* 684 F.2d 634, 640 (9th Cir.1982); Fed.R.Crim.P. 52(b).

■ In order to constitute "plain error," the error must be "plain" or clear on its face under current law and must affect a substantial right. *See United*

---

**3.** We discuss this issue more thoroughly in a companion case, *United States v. Benavidez–Benavidez,* 217 F.3d 720, 723 (9th Cir.2000). In *Benavidez–Benavidez,* we hold that our decision in *Cordoba* does not "mandate a.new seriatim formalistic inquiry, requiring the district court to conduct a *Daubert* hearing in every case." *Id.* at 724. Rather, the district court may choose to admit or exclude evidence based on a choice of several evidentiary grounds.

**4.** Campos' objection to the admission of Customs Agent Darvas' testimony based on her contention that it was improper drug courier profile evidence does not encompass an objection to the testimony based on Rule 704(b), but rather, implicates Rule 403. The exclusion of drug courier profile evidence is premised on the concern that "the use of such profiles is of limited probative value and is extremely prejudicial." *Beltran–Rios,* 878 F.2d at 1210.

*States v. Olano*, 507 U.S. 725, 732–34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Although we have not yet approved of the use of such expert testimony in non-complex cases, we have not disapproved of it. Thus, because such evidence may be admitted in complex cases, *see Cordoba*, 104 F.3d at 230, the district court did not plainly err in admitting it here, *see United States v. Webb*, 115 F.3d 711, 720–22 (9th Cir.1997) (Jenkins, J. concurring). We do not reach the question of whether such expert testimony would be admissible in a non-complex case over a proper objection made to the trial court.

## IV

■ The district court correctly denied Campos' Rule 29 motion for acquittal, a decision we review *de novo*. *See U.S. v. Hernandez*, 105 F.3d 1330, 1332 (9th Cir. 1997). The government presented suffi-

cient evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that Campos knowingly and intentionally imported and possessed 151 pounds of marijuana with intent to distribute. Thus, the motion was properly denied.

**AFFIRMED**

PREGERSON, Circuit Judge,
concurring in part and dissenting in part:

I concur in the majority's opinion with respect to the inadmissibility of the polygrapher's testimony proffered by the defense. There is only one disputed issue in this case, viz: Whether Teresa Maria Campos knew that the marijuana was hidden in the ceiling compartment above the passenger side of the van that she was driving when arrested at the San Ysidro Port of Entry.[1] Campos—a working and

---

1. The majority opinion fails to set forth much of the factual record in this case. The record on appeals reveals the following:

Teresa Maria Campos is a licensed and working cosmetologist in Los Angeles and a mother of four children, with no prior criminal record. On the day of her arrest, Campos, along with her three-year-old twin daughters, her 15–year–old daughter, and a girlfriend and coworker, Eustolia Vargas, traveled to Tijuana, Mexico for the day. Her 10–year–old son remained in Los Angeles. Jose Antonio Lopez, a customer of Campos, had offered to drive her to Tijuana to attend an afternoon party. Campos agreed to go because she wanted to take her daughter back to an eye clinic in Tijuana that she had visited four times before, and she wanted to pick up her daughter's eyeglasses there. She also wanted to see the eye doctor herself, and she wanted to go to the party. Campos has an eye condition for which she needs surgery. She has no insurance to cover the cost, but she thought she could afford treatment in Mexico. She took along her 3–years–old twins because she did not want to leave them alone in Los Angeles; and she asked her girlfriend Vargas to go too because she did not want to go alone.

Lopez drove Campos, Vargas, the children, and two unidentified friends of his (neither Campos nor Vargas knew who they were) down to Tijuana. They had breakfast together in a restaurant. Then Lopez dropped Campos, Vargas, and the children at the doc-

tor's office. Lopez and the two unidentified men were gone for a couple of hours; Campos and Vargas did not know where they went or what they did. Meanwhile, Campos got her daughter's eyeglasses and was personally referred to an eye surgeon, who she also went to see that day. Lopez then picked them all up, and they went to the party.

At around 5:00 p.m., Campos and Vargas decided it was time to drive back home because they were expected back at work in Los Angeles the next day. But Lopez refused to leave. He was either already too drunk or just wanted to keep drinking. He told them they could use his white van to drive themselves back. The white van was a different van than the one that Lopez drove them down in; Lopez said that the van he drove them down in was not working well.

Campos did not want to drive a van, because she had never driven one before. She asked if there was a smaller car that she could use. Lopez said there was not. He told her to drive his white van back to Los Angeles, park on the street in front of her beauty salon, and that he would pick it up in a few days.

Campos, Vargas, and the children took the white van and drove to a store. They bought some underwear, a large box of laundry soap, a bottle of alcohol, and some medication. They then drove to the San Ysidro Port of Entry.

During the primary border inspection, the customs agent said that Campos appeared

licensed cosmetologist in Los Angeles, with no criminal record—steadfastly insists that she did not know about the marijuana in the van that is owned by one Jose Antonio Lopez. For this reason, she sought to admit the polygrapher's testimony that her physiological responses to his questions concerning her knowledge of the marijuana in the van were not consistent with deception. The district court correctly ruled this evidence inadmissible under Rule 704(b)[2] of the Federal Rules of Evidence because it spoke directly to the ultimate issue of Campos's mens rea.

But I disagree with the majority's conclusion that the trial judge did not plainly err under Rule 704(b) in permitting the government to offer an expert's testimony that Campos knew about the marijuana in the van. The trial judge stated on the record after the jury retired to deliberate: "I don't know what the result will be. I think it's a very thin case for the Government." His incorrect decision to admit that expert testimony thus clearly affected the outcome of the trial and Campos's substantial rights. I would hold that the district court plainly erred under Rule 704(b) in admitting the government's expert testimony first for the same reason it correctly ruled that Campos's polygra-

pher's testimony was inadmissible. Moreover, because such expert testimony directly addressed the ultimate issue of Campos's knowledge, it is not admissible as generic "modus operandi" evidence. Finally, such testimony was inadmissible expert testimony under Rule 702 because it was not needed to "assist the trier of fact to understand the evidence." Fed. R.Evid. 702. For these reasons, I would reverse and remand for a new trial.

### I.

U.S. Customs Special Agent Peter Darvas was permitted to testify as follows on the issue of Campos's knowledge of the marijuana hidden in the van:

> Prosecutor: Now, in your opinion, Agent Darvas, would a trafficking organization trafficking in that quantity of marijuana, 151 pounds, entrust it to a courier that does not know what he or she is transporting?

> [Objection noted]

> Agent Darvas: In my opinion, no, they would not.

> Prosecutor: And what is the basis for your opinion?

---

nervous and would not make eye contact with him. Campos said that when she arrived at the border, she was still angry that Lopez would not drive them back to Los Angeles as he had promised, that she nervous about having to drive a van, and that her children were crying at the time. The customs agent also said that Campos told him that Lopez was her boyfriend. Campos denied that she ever said that and produced evidence at trial showing that Lopez was not her boyfriend. The agent noticed during the primary inspection that the ceiling of the van appeared lower than normal. On this basis, he ordered a secondary inspection.

During the secondary inspection, another customs agent asked Campos some questions. He noticed the ceiling of the van and the laundry detergent, which he later said is often used by drug smugglers to cover the smell of marijuana. He asked Campos to step out and open the back of the van. It took her a few seconds to do so. From the record, it is not clear why she did not immediately comply.

Campos, Vargas, and the children were then taken into the customs office. Meanwhile, a canine narcotics detection unit was called in and the dogs "alerted" the agents to the ceiling of the van. Whereupon the agents discovered eighty-nine packages of marijuana, weighing a total of 151 pounds, hidden in the ceiling compartment on the passenger side of the van. Campos and Vargas denied knowing anything about the marijuana. Campos was arrested. Vargas was not.

2. Rule 704(b) states:

No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matter for the trier of fact alone.

Fed.R.Evid. 704(b).

Agent Darvas: The basis for my opinion ... has a number of components. First of all, you have to think about the value that is contained in the car, the amount of money that's invested into the product that's in the car. It's a tradeable product, something that's readily worth money, in this case, many, many thousands of dollars worth of money. And the person that is responsible for getting this across the border is accountable for that marijuana in much the same way as the person driving the car is accountable for the marijuana in the car until it reaches its destination.

I've had a number of occasions to talk to individuals in organizations that smuggle marijuana across the border—that's their business, that's their livelihood—and it's been explained to me that nobody in their right mind would entrust that amount of marijuana to somebody that doesn't know what they are doing. They may misrepresent the amount that is in the car, sometimes they may misrepresent the type of drug that's in the car, but the driver of the vehicle that's crossing the border with—with the drugs in it knows what's in the car because that's the way the organization functions; that's their livelihood.

Agent Darvas was also permitted to testify to the value of the marijuana seized and the structure of drug smuggling organizations.

In a motion in limine and at trial, Campos objected to all of Agent Darvas's testimony as improper drug courier profile evidence. As the majority opinion notes, drug courier profile evidence is excluded under Fed.R.Evid. 403 because "the use of such profiles is of limited probative value and is extremely prejudicial." *United States v. Beltran–Rios*, 878 F.2d 1208, 1210 (9th Cir.1989). Because Campos did not object to the admission of Agent Darvas's testimony on the ultimate issue of knowledge under Rule 704(b), this court must review the district court's decision to admit this portion of Agent Darvas's testimony for plain error. *See United States v. Olano*, 507 U.S. 725, 730, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

Under the plain error standard, "relief is not warranted unless there has been (1) error; (2) that is plain; and (3) affects substantial rights." *Jones v. United States*, 527 U.S. 373, 119 S.Ct. 2090, 2095, 144 L.Ed.2d 370 (1999). To establish that the error affected the defendant's "substantial rights," the defendant must "show that the error 'affected the outcome of the district court proceedings.'" *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir.2000) (quoting *United States v. Tisor*, 96 F.3d 370, 376 (9th Cir.1996) (quoting *Olano*, 507 U.S. at 734, 113 S.Ct. 1770)). We must examine "the alleged error in the context of the entire record to determine whether it rises to the level of 'plain error.'" *United States v. Wallace*, 848 F.2d 1464, 1473 (9th Cir.1988); *see also United States v. Campbell*, 42 F.3d 1199, 1204 (9th Cir.1994) ("In applying the plain error standard we consider all circumstances at trial including the strength of the evidence against the defendant."). We will not reverse a conviction "unless the error seriously affect[s] the fairness, integrity or public reputation of the judicial proceedings." *Olano*, 507 U.S. at 736, 113 S.Ct. 1770 (alteration in original). Proof of the defendant's "actual innocence," however, is not required. *See id.*

## II.

The majority opinion summarily concludes that the district court's decision to admit Agent Darvas's testimony concerning a drug courier's knowledge could not constitute an error that is " 'plain' or 'clear on its face' [under Rule 704(b)]" because such evidence may be admitted in complex cases." Majority Op. at 713 (citing *United States v. Cordoba*, 104 F.3d 225, 230 (9th Cir.1997); *United States v. Webb*, 115 F.3d 711, 720–22 (9th Cir.1997) (Jenkins, J. concurring)). The majority is mistaken for three reasons: (1) Expert testimony that

violates Rule 704(b) is never admissible; (2) Expert testimony that speaks directly to the ultimate issue of the defendant's knowledge is not admissible as generic "modus operandi" evidence regardless of the complexity of a case; and (3) Expert testimony that does not "assist the trier of fact to understand the evidence" is never admissible under Rule 702.

## A. Inadmissibility Under Rule 704(b)

This circuit has never held that an expert may testify to a drug courier's knowledge when doing so violates Rule 704(b). This circuit has *only* held that under Rule 403[3] a trial judge does not abuse his or her discretion in admitting expert "modus operandi" testimony bearing on the knowledge of drug couriers in complex criminal cases. *See Cordoba,* 104 F.3d at 229.[4] The error in admitting Agent Darvas's expert testimony on the ultimate issue of Campos's knowledge was "plain" under Rule 704(b). The fact that similar testimony in a complex criminal case was held admissible under Rule 403 does not lessen the "plainness" of the error in this case. If it did then whenever this court rules in one case that testimony is admissible under one rule of evidence, it can never be "plain error" to admit similar evidence in a *different case under a different rule of evidence.*[5] That is not what is meant by a "plain" or "obvious" error. A "plain" error means an error that "is so clear-cut, so

obvious a competent district court judge should be able to avoid it without benefit of [any] objection." *United States v. Turman,* 122 F.3d 1167, 1169 (9th Cir.1997). When "the state of the law" is clear at trial, "the district court's error is perforce ... plain." *Id.*

At the time of Campos's trial, "the state of the law" in this circuit on Rule 704(b) was unequivocal. As this court stated in *United States v. Morales,* 108 F.3d 1031 (9th Cir.1997), Fed.R.Evid. 704(b) permits experts to testify to a "predicate matter," *id.* at 1037, which supports

> an inference or conclusion that the defendant did or did not have the requisite mens rea, *so long as the* expert does not draw the ultimate inference or conclusion for the jury and the *ultimate inference or conclusion does not necessarily follow from the testimony.*

*Id.* at 1038 (emphasis added). In *Morales,* the defendant was charged with willfully making false bookkeeping entries. *See* 108 F.3d at 1034. Morales wanted an accounting expert to testify that her "understanding of accounting principles" was "weak." *Id.* at 1037. This court concluded that the district court in *Morales* erred in barring this testimony under Rule 704(b) because:

> Even if the jury believed [the] expert testimony that Morales had a weak grasp of bookkeeping knowledge (and

**3.** Rule 403 provides in part that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Fed.R.Evid. R. 403.

**4.** The *Cordoba* court, in support of its ruling, cited *United States v. Castro,* 972 F.2d 1107 (9th Cir.1992). *Castro* was a complex drug conspiracy case involving multiple individuals and many seemingly innocuous activities. As the *Cordoba* court parenthetically noted, in *Castro* "experts testified that the amount of cocaine, valued in the millions of dollars, would not have been entrusted to an unknowing dupe." *Cordoba,* 104 F.3d at 229 (quoting *Castro,* 972 F.2d at 1111). But in *Castro* the issue on appeal was the sufficiency of the evidence, not the admissibility of this evidence. The admissibility of this evidence was

not even an issue at trial. Therefore, the reference to this evidence in *Castro* has no bearing on whether an alleged error in the admissibility of such evidence would be plain or obvious under any rule of evidence.

**5.** This observation is to be distinguished from the majority's observation that the law does not require a trial judge to determine that evidence in the case before it is inadmissible under multiple rules of evidence. *See* Majority Op. at 712. I agree with the majority that once a trial judge rules evidence inadmissible under one rule of evidence, "there is no need for [the] court to determine whether [the evidence] satisfies predicate evidentiary standards pertaining to" another rule evidence. *Id.*

there was evidence to the contrary), the jury would still have had to draw its own inference from that predicate testimony to answer the ultimate factual question-whether Morales willfully made false entries. Morales could have had a weak grasp of bookkeeping principles and still knowingly made false entries as charged.

*Id.*

Here, if the jury believed Agent Darvas's expert testimony, it necessarily had to conclude that Campos—as a drug courier transporting precisely 151 pounds of marijuana—knew about the marijuana in the van. Agent Darvas further cemented the inevitability of this conclusion by testifying that "nobody in their right mind would entrust that amount of marijuana to somebody that doesn't know what they are doing." Thus, this testimony falls squarely within the rule in *Morales:* It constitutes expert testimony to a "predicate matter," which necessarily leads to the conclusion that the defendant had the requisite mens rea. *See Morales,* 108 F.3d at 1038. As such, it is inadmissible under Rule 704(b).

The inadmissibility of Agent Darvas's testimony is even more "plain" under our decision in *United States v. Webb,* 115 F.3d 711 (9th Cir.1997). In *Webb,* a police officer testified that "it is typical for people to conceal weapons in the engine compartments of their cars ... because police seldom search there ... and ... if discovered, it is easier to claim that they did not know about the weapon." *Id.* at 713. The defendant challenged the admissibility of this testimony under Rule 704(b). *Webb* concluded that the officer's testimony was admissible "modus operandi" evidence. In so ruling, *Webb* drew a sharp distinction between expert testimony that "describes a typical situation" involving criminal conduct and expert testimony that attests to the knowledge of a hypothetical defendant. *See id.* at 716. "The expert [in *Webb* ] testified about a typical way people conceal weapons in cars and the typical reasons for

their concealment." 115 F.3d at 715. "[T]he Government did *not* ask the police expert about either Webb's intent or knowledge, or a *hypothetical defendant's intent or knowledge.*" *Id.* at 716 (emphasis added). Moreover, the "expert admitted [on cross-examination] that he had no information that Webb knew the weapon was in the engine compartment." *Id.* at 715. "Under these circumstances, it was left to the jury to decide whether Webb knew the gun was hidden in the car." *Id.*

On the other hand, *Webb* stated that it would be an abuse of discretion to permit a "prosecutor to ask an expert's opinion as to whether a hypothetical defendant in a hypothetical factual scenario, *indistinguishable from the defendant and facts in the case before the court,* had the intent necessary for conviction." *Id.* at 716 (citing *United States v. Boyd,* 55 F.3d 667, 671 (D.C.Cir.1995) (emphasis added)). That is precisely what happened in this case. The government asked Agent Darvas: "Now, in your opinion ... would a trafficking organization trafficking in that quantity of marijuana, 151 pounds, entrust it to a courier that does not *know* what he or she is transporting?" To which, Agent Darvas testified: "In my opinion, no, they would not ... nobody in their right mind would entrust that amount of marijuana to somebody that doesn't *know* what they are doing." Thus, Agent Darvas testified to a hypothetical scenario that was factually "indistinguishable from the defendant and the facts" in this case. And, if his testimony was believed, it "necessarily follow[ed]," *Morales,* 108 F.3d at 1038, that Campos knew about the marijuana in the van. The inadmissibility of this testimony under Rule 704(b) is therefore patently clear. *See Webb,* 115 F.3d at 715–16.

Thus, Agent Darvas's testimony on the ultimate issue of knowledge is inadmissible under Rule 704(b) precisely for the same reason that the polygrapher's testimony was inadmissible. As the majority opinion states: "[T]here is no principled distinction ... between the testimony of Campos'

polygraph expert regarding her physiological responses to the questions posed during the examination and the conclusion from that testimony that she did not "know" that the van contained a significant amount of marijuana." Majority Op. at 712. Similarly, "there is no principled distinction" between Agent Darvas's expert testimony that a drug courier transporting precisely 151 pounds of marijuana would know about the drugs he or she was transporting because no trafficker in his right mind would entrust that amount of drugs to an unknowing drug courier and the conclusion from that testimony that Campos as a drug courier carrying 151 pounds of marijuana knew about the drugs in the van. Both the polygrapher's excluded testimony and Agent Darvas's admitted testimony necessarily lead to the conclusion that Campos either did or did not know about the marijuana in the van.

The "plainness" of the error in admitting Agent Darvas's testimony on the ultimate issue is even more clear in light of *United States v. Wang*, 49 F.3d 502 (9th Cir.1995). In *Wang*, we stated: "we now make explicit, the better practice would be for the prosecutor not to ask … questions arguably bearing on intent and for a district court not to find such answers admissible." *Id.* at 504. Expert testimony offered by the government on whether the defendant "had the mental state constituting an element of the crime charged" is inadmissible under Rule 704(b). *Id.* The error warrants reversal where the admission of the evidence is "manifestly erroneous." *Id.* (citing *United States v. Kinsey*, 843 F.2d 383, 389 (9th Cir.1988); *United States v. Espinosa*, 827 F.2d 604, 613 (9th Cir. 1987)). Where the "quantity of evidence" pointing to the defendant's guilt is "substantial," then the error is not "manifestly erroneous." *See id.* (citing *Kinsey*, 843 F.2d at 389 (stating that because the evidence of the defendant's "guilt was so overwhelming and convincing that any error in the admission of [the detective's] testimony would be harmless beyond a reasonable doubt")).

Here, the evidence of Campos's guilt is far from "substantial" or "overwhelming." In fact, the district court described the government's case as "very thin." The *only* issue in dispute was whether Campos *knew* about the marijuana in the van. And the only direct evidence explicitly establishing Campos's knowledge is Agent Darvas's testimony. Under such circumstances, there can be little doubt that the error in admitting Agent Darvas's testimony is "manifestly erroneous" and significantly "affected the outcome of the district court proceedings." *Hankey*, 203 F.3d at 1167. Given the evidence in the record, "one cannot say, with fair assurance … that the judgment was not substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 764–75, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Thus, "it is impossible to conclude that [Campos's] substantial rights were not affected." *Id.*

**B.  Ultimate Issue Expert Testimony Is Not "Modus Operandi" Evidence**

" '[G]overnment agents … may testify as to the general practices of criminals to establish the defendants' modus operandi.' " *United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir.1995) (quoting *United States v. Johnson*, 735 F.2d 1200, 1202 (9th Cir. 1984)); *see also United States v. Alonso*, 48 F.3d 1536, 1541 (9th Cir.1995) (holding that expert testimony is permitted to explain "how *otherwise innocent conduct* … might in fact be consistent with or even indicative of criminal conduct"). Such testimony is admissible because it " 'helps the jury to understand *complex criminal activities*, and to alert it to the possibility that combinations of *seemingly innocuous events* may indicate criminal behavior.' " *Webb*, 115 F.3d at 714 (quoting *Johnson*, 735 F.2d at 1202) (emphasis added). For example, in criminal drug conspiracy cases, expert "modus operandi" testimony is often permitted to explain how the criminal actions of the defendants interrelate. *See, e.g., United States v. Patterson*, 819

F.2d 1495, 1507 (9th Cir.1987). Similarly, expert "modus operandi" testimony may be used by the government to explain that "drug traffickers often employ counter-surveillance driving techniques, register cars in others' names, make narcotics and cash deliveries in public parking lots, and frequently use pagers and public telephones." *Gil*, 58 F.3d at 1422; *see also, Alonso*, 48 F.3d at 1541 (reviewing numerous cases so holding).

In this case, Campos took a day trip to Tijuana, Mexico and was arrested at a United States–Mexican port of entry when customs agents discovered 151 pounds of marijuana hidden in the ceiling compartment of the van she was driving. Under *Webb* and *Gil*, expert "modus operandi" testimony was admissible to explain how Campos's "seemingly innocuous" conduct on the day of her arrest could arguably suggest her role as a "mule" in a drug trafficking organization. Thus, at trial, the jury properly heard Agent Darvas's expert testimony that (1) the marijuana had a street value of $120,000; and (2) that "marijuana drug trafficking organizations, ... particular[ly those involved in] the smuggling or the transportation [of drugs] from Mexico to the United States," often use human "mules" whose only "job is to drive the car, or the truck, or whatever the vehicle happens to be" across the border. Such "modus operandi" testimony certainly alerted the jury to the possibility that Campos's conduct on the day of her arrest "may indicate criminal behavior." *Webb*, 115 F.3d at 714.

But when Agent Darvas effectively testified to Campos's knowledge of the 151 pounds of marijuana in the van because "nobody in their right mind would entrust that amount of marijuana to somebody that doesn't know what they are doing," his testimony was not "modus operandi" evidence. His testimony did not merely describe in general terms how a drug trafficking organization works. Agent Darvas essentially testified that Campos knew about the drugs in the van. The prosecu-

tor asked about the "knowledge" of a drug courier in a factual situation indistinguishable from Campos's. And Agent Darvas testified to that knowledge. That is not "modus operandi" testimony under *Webb*, *see* 115 F.3d at 715–16, and is inadmissible evidence under *Wang*, *see* 49 F.3d at 504.

## C. Agent Darvas's Ultimate Issue Testimony Did Not "Assist the Trier of Fact"

Common sense suggests that an expert's "specialized knowledge" is not needed to "assist the trier of fact" to glean from the evidence presented in this case the inference that Campos may have known about the marijuana. Fed.R.Evid. 702. Under the rules of evidence, an expert's testimony is not admissible unless it conveys "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue...." Fed.R.Evid. 702; *see also Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (interpreting Rule 702 as requiring trial judges to serve as "gatekeepers" to all expert testimony to ensure it meets these requirements).

Here, Agent Darvas testified that his "expert" opinion on drug courier's knowledge was based as much, if not more, on a common sense review of the facts than on his "specialized knowledge" as a law enforcement officer. When asked "what [was] the basis for his opinion," Agent Darvas initially responded:

You have to think about the value that is contained in the car, the amount of money that's invested into the product that's in the car. It's a tradeable product, something that's readily worth money, in this case, many, many thousands of dollars worth of money. And the person that is responsible for getting this across the border is accountable for that marijuana in much the same way as the person driving the car is accountable for

the marijuana in the car until it reaches its destination.

I've had a number of occasions to talk to individuals in organizations that smuggle marijuana across the border—that's their business, that's their livelihood—and it's been explained to me that nobody in their right mind would entrust that amount of marijuana to somebody that doesn't know what they are doing. They may misrepresent the amount that is in the car, sometimes they may misrepresent the type of drug that's in the car, but the driver of the vehicle that's crossing the border with—with the drugs in it knows what's in the car because that's the way the organization functions; that's their livelihood.

There is simply no reason why Agent Darvas should have been permitted to offer his expert opinion as to whether Campos knew about the marijuana in the van. The prosecutor could just as easily made these same points in his closing argument. Expert testimony is only admissible because it is needed to "assist the trier of fact" in understanding complex criminal activities or in understanding how seemingly innocuous actions combine to result in criminal activity. *See Webb,* 115 F.3d at 717–21 (Jenkins, J., concurring); *see also Gil,* 58 F.3d at 1422. To assert that every border arrest—even one involving a single defendant transporting a relatively small amount of marijuana—constitutes a complex criminal case justifying the admission of such ultimate issue expert testimony means that the exception has swallowed the rule.

### III.

In sum, the trial judge plainly erred in admitting Agent Darvas's expert testimony concerning the ultimate issue of Campos's knowledge. This testimony violated Rule 704(b) for the same reasons that the polygrapher's proferred testimony violated Rule 704(b). Moreover, Agent Darvas's testimony concerning the knowledge of drug couriers in this case did not consti-

tute admissible "modus operandi" evidence because it did not merely describe or explain in general terms how Campos's innocuous conduct on the day of her arrest may suggest criminal activity. Rather, Agent Darvas testified to the criminal intent of a hypothetical defendant in a situation that was factually indistinguishable from that of Campos. If believed, his testimony necessarily lead the jury to conclude that Campos knew about the marijuana secreted in the van. Under established Ninth Circuit precedent, the error in admitting this evidence was plain and clearly affected Campos's substantial rights and "the fairness [and] integrity ... of the judicial proceedings." *Olano,* 507 U.S. at 736, 113 S.Ct. 1770. Accordingly, I would reverse Campos's conviction and remand for a new trial.