**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John Carlos DUARTE, Defendant–
Appellant.**

No. 00–10552.

D.C. No. CR–99–1053–SMM.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 13, 2001.

Decided Oct. 1, 2001.

Before POLITZ,* KOZINSKI, and O'SCANNLAIN, Circuit Judges.

MEMORANDUM **

John Carlos Duarte was convicted of possessing with intent to distribute in excess of 50 grams of methamphetamine in violation of 21 U.S.C. § 841. He was sentenced to confinement for a term of 168 months. Duarte appeals his conviction[1] on

---

* The Honorable Henry A. Politz, Senior United States Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. While Duarte's brief states that he appeals both his conviction and sentence, his arguments are directed solely to his conviction.

various grounds. The facts and prior proceedings are known to the parties, and are restated herein only as necessary.

## I

■ Duarte first argues that the district court abused its discretion by not continuing his trial after the Arizona Department of Public Safety Highway Patrol ("DPS") failed to produce until the first day of trial records concerning Officer Jex's arrests. Duarte cannot show, however, either that any further continuance would have been useful, or that he suffered harm as a result of the denial of a continuance. The district court postponed Duarte's cross-examination until the end of the government's case in chief, giving Duarte's counsel two afternoons and evenings to review the documents, and even cut trial short on each of the first two days to give Duarte's counsel more time to read the documents. Duarte was thus able to use the documents in an oral motion to dismiss, to cross-examine Jex extensively, and also in his closing argument. Therefore, his challenge must fail. *See United States v. Long,* 706 F.2d 1044, 1053 (9th Cir.1983) ("Before we can reverse for an abuse of discretion in the denial of a continuance, the appellant must establish that the refusal resulted in prejudice to his defense . . . .") (internal citation omitted).

## II

■ Duarte next argues that Jex violated his Fourth Amendment right to freedom from unreasonable searches and seizures. While temporary detention of an individual during a traffic stop constitutes a seizure of persons within the meaning of the Fourth Amendment, "[a]s a general matter, the decision to stop an automobile

Consequently, only those arguments are considered on appeal. *See, e.g., Northwest Acceptance Corp. v. Lynnwood Equip., Inc.,* 841

is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States,* 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Given that in this case Jex twice observed Duarte following a vehicle in front of him too closely (in violation of an Arizona statute), Jex had probable cause to believe that a traffic violation had occurred.

Duarte nonetheless argues that the stop was unconstitutional because Jex's actual purpose in stopping Duarte was to investigate drug trafficking. Supreme Court precedent, however, forecloses this argument. The constitutional reasonableness of traffic stops does not depend on the actual motivations of the individual officers involved. *See Whren,* 517 U.S. at 811.

■ Duarte further contends that, even if the initial stop was valid, the search of his vehicle was not. Duarte consented to the search, but he argues that because Jex had already decided to detain the vehicle when he asked for consent, the consent was invalid. Duarte, however, was free to go when Jex asked for Duarte's consent: Jex had returned Duarte's license and told him to "drive safely." Thus, Duarte was not detained when he gave his consent. *Cf. Florida v. Royer,* 460 U.S. 491, 504, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality) (where officers detained man in an airport and took his ticket and driver's license, the officers "may have obviated any claim that the encounter was anything but a consensual matter" by returning them and "informing [the man] that he was free to go if he so desired"). Nor was Duarte's consent to search his vehicle otherwise involuntary. *See United States v. Kim,* 25 F.3d 1426, 1432 (9th Cir.1994).

F.2d 918, 923–24 (9th Cir.1988) (appellate claims that are named but not argued are waived).

Consequently, the search did not violate the Fourth Amendment.

## III

Duarte next challenges the denial of his motions to exclude the government's proffered expert testimony altogether, and for the first time on appeal, the expert's use of the term "Mexican" in his testimony.

### A

■ Duarte contends that the district court erroneously admitted the expert testimony of Agent Douglas Herbert, who testified about the *modus operandi* of drug trafficking organizations. At trial, Duarte's defense was that he didn't know the drugs were in the car he was driving. Herbert's testimony was offered to show that Duarte knew that he was, in fact, transporting drugs. Where "the sole issue at trial was whether defendant knew that the car he was driving contained drugs," admission of "expert testimony on the value, organization, and structure of drug smuggling organizations" is appropriate. *See United States v. Murillo*, 255 F.3d 1169, 1176–77 (9th Cir.2001); *see also United States v. Campos*, 217 F.3d 707, 712 (9th Cir.2000). This testimony was thus admissible.[2]

### B

■ On appeal, Duarte offers a second reason why Herbert's testimony was inadmissible: he argues that the testimony violated his Fifth Amendment right to a

fair trial because the expert referred to "Mexican" trafficking organizations and Duarte is, in fact, of Hispanic descent. Duarte points to *United States v. Cabrera*, 222 F.3d 590 (9th Cir.2000) in support of his argument.

*Cabrera* stands for the unremarkable proposition that "[a]ppeals to racial, ethnic, or religious prejudice during the course of a trial violate a defendant's Fifth Amendment right to a fair trial." *Cabrera*, 222 F.3d at 594. In *Cabrera*, the government's lead witness, Detective Brooks, testified at length. During the course of his testimony, Brooks made numerous incendiary remarks about Cubans and their involvement in the drug trade in the Las Vegas area, and about the defendants' racial heritage specifically. *See id.* at 591–93. On appeal, we found that this miasma of inflammatory race-based testimony was "not relevant under [Fed.R.Evid.] 401 and 402," was "improper" under Rule 403, and in fact, amounted to "generalizations about racial and ethnic groups [made] in order to obtain convictions." *Id.* at 596–97. Consequently, even though there was sufficient evidence to support the convictions, the court found plain error and reversed.

There is a crucial difference between this case and *Cabrera:* unlike in *Cabrera*, the government's witness in this case made no mention of the defendant's ethnic background, nor did he refer to the defendant as part of an ethnic group. Herbert's testimony was limited to consideration of

---

**2.** In his reply brief Duarte argues, citing *United States v. Vallejo*, 237 F.3d 1008 (9th Cir.), *amended by* 246 F.3d 1150 (9th Cir.2001), that because the only issue in dispute was whether Mr. Duarte had knowledge that the methamphetamine was stored in the vehicle he was driving, admission of expert evidence to prove the defendant knew of the contraband is irrelevant and unfairly prejudicial. Duarte's reliance on *Vallejo*, however, is mis-

placed. Footnote three of the amended opinion in *Vallejo* makes clear that "this case does not involve the Government's use of 'unknowing courier' testimony, in which a law enforcement official testifies that certain drug traffickers do not entrust large quantities of drugs to unknowing transporters. Therefore, we do not address the admissibility of such testimony." *See Vallejo*, 237 F.3d at 1016 n. 3.

criminal organizations, rather than individuals or ethnic groups. Unlike *Cabrera*, then, this case did not raise the specter that the government sought a conviction based simply on the defendant's being part of a given ethnic group. *See Cabrera*, 222 F.3d at 596.[3] Consequently, while perhaps inappropriate,[4] Herbert's use of the adjective "Mexican" in describing large drug organizations was not plain error.

## IV

■ Finally, Duarte argues that the district court erred when it allowed the introduction of evidence of the conviction of a John Duarte for transportation of marijuana. The government sought to introduce the conviction under Fed.R.Evid. 404(b) to show intent or knowledge. Duarte argues that the evidence the government offered was insufficient to connect Duarte to the "John Duarte" who was the subject of the state court conviction.

Evidence of a prior act under Rule 404(b) "should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." *Huddleston v. United States*, 485 U.S. 681, 685, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). This threshold is a "minimal" one. *Id.* at 690. There is ample evidence to connect Duarte the defendant to Duarte the subject of the state court conviction: both men are named "John C. Duarte," and both share the

same date of birth, social security number, and place of residence. Moreover, Duarte did not offer any contradictory evidence. Consequently, the evidence was more than sufficient to show that the two Duartes were, in fact, one. *See Pasterchik v. United States*, 400 F.2d 696, 701 (9th Cir.1968) (identity of name sufficient to establish the identity of the person in the absence of contradictory evidence). This trial court's finding was not an abuse of discretion.

Accordingly, Duarte's conviction is AFFIRMED.

---

3. Duarte alleges for the first time in his reply brief that the real reason Herbert's comments were prejudicial is because the district court pointed out that Duarte spoke Spanish and needed an interpreter. The court's statements on the subject were actually designed to *minimize* any prejudicial effect of Duarte's using an interpreter, rather than to prejudice Duarte. In any event, because Duarte did not raise this issue in his opening brief, it is waived. *See Omega Environmental, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1167 (9th Cir. 1997).

4. Even if the "large" organizations were predominantly (or even exclusively) Mexican, the government could have made its point just as effectively by having Herbert testify that (1) Duarte was caught with seventeen pounds of methamphetamine; (2) only *large* organizations (with no reference to "Mexican" organizations) could produce that much methamphetamine; and (3) such *large* organizations would not entrust that much methamphetamine to an unknowing courier.